Filed 10/7/21  In re K.A. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.A. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E077088 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J286878 & J286879 & J286880) |
| v. | OPINION |
| M.A., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Maryann M. Goode, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, Svetlana Kauper, Deputy County Counsel for Plaintiff and Respondent.

1

## FACTUAL AND PROCEDURAL HISTORY

M.A. (Mother) is the mother and F.A.[1] (Father) is the father of A.A. (male, born 2008), D.A. (male, born 2010), and K.A. (female, born 2015) (collectively, the Children).

On September 10, 2020, the Children came to the attention of San Bernardino County Children and Family Services (CFS) for allegations of neglect by Father. The referral described an instance of Father discharging a firearm in the home.

During the investigation, the social worker learned that Father was employed with the Los Angeles Probation Department. He, however, had been on administrative leave for over a year. Moreover, he had multiple firearms in the home in violation of a restraining order. Mother reported that Father purchased additional firearms after the issuance of the restraining order. Mother was especially worried after an incident on September 6, 2020. On that date, Father discharged a round of ammunition in the home. According to Mother, this was the second incident involving a gun discharge. Although Father claimed that the discharge was accidental, Mother did not believe him.

During the September 6, 2020, incident, all three minors were home. D.A. and A.A. heard a "loud pop." A.A. described the sound as "a big bang" that scared him. D.A. also stated he was scared after hearing the gun fire. For the safety of the Children, Mother took them to the maternal grandparents' home. Father voluntarily checked himself into a mental health facility. Later, Father moved out of the family home and rented another residence.

---

[1] Father is not a party to this appeal.

Moreover, the social worker discovered that Father suffered from depression, anxiety, and suicidal ideations for which he had several voluntary hospitalizations. Father took mood stabilizers to treat his mental health issues. Mother disclosed that Father was receiving counseling for mental health treatment.

In Mother's interview with the social worker, Mother shared prior incidents of domestic violence when Father got aggressive when he was upset. He yelled and punched the walls. On one occasion, Father threw an ottoman. A.A. also reported that he was afraid of Father's anger on occasion. K.A. stated that she witnessed her parents fighting.

The social worker opined that Father was a danger to himself and others. Therefore, she recommended the removal of the Children from Father while maintaining them with Mother.

On October 7, 2020, CFS filed a Welfare and Institutions[2] Code section 300 petition on behalf of each child. On October 8, 2020, the juvenile court temporarily detained the Children in Mother's custody while removing them from Father. The court also ordered supervised visits for Father for two hours weekly. Mother was not to supervise Father's visits. The court then granted CFS the authority to increase the frequency and duration of the visits.

---

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

In the jurisdiction/disposition report filed on October 26, 2020, CFS recommended that the petitions be sustained and father be offered reunification services while maintaining the Children with Mother under the court's supervision.

The social worker reported that she interviewed Father on October 20, 2020. During the interview, Father admitted that he had a domestic violence incident with Mother where he threw an ottoman. The incident, however, occurred almost a year prior and presented an isolated incident. Father reported that he had been diagnosed with depression and anxiety; he was taking medication and receiving therapeutic services. He also admitted to suicidal ideations in the past but denied having current episodes or attempts. Additionally, Father reported that he was a " 'gun enthusiast' " and collected firearms. He admitted that there was a restraining order limiting his access to firearms. This order expired in April or May of 2020. "He stated that as soon as he was able to gain possession of guns, he got guns again." He told the social worker that he never threatened Mother with a gun. He admitted that his gun went off accidentally in September of 2020. Father stated that "[h]e was cleaning the firearm, he was pointing it in the opposite direction, towards the wall. [Father] stated that the children were downstairs in the kitchen, and he was in his office downstairs. He stated that his wife was upstairs bathing his daughter at the time of the incident." After this incident, Father "stated that he has turned all of his weapons in, and that he 'is completely done with guns.' He no longer wants guns in his home."

When the social worker interviewed the Children, they stated they felt safe at home with Mother. As to the domestic violence, the Children reported that the parents

4

argued or did not speak to each other when they did not get along. All three children denied witnessing any physical altercations.

In the jurisdiction/disposition report, the social worker provided that on October 6, 2020, Mother obtained a temporary restraining order against Father. On October 27, 2020, a family law court granted a permanent restraining order. CFS believed Mother shared its concerns for the safety of the Children and exhibited protective capacity. As for Father, CFS identified his unstable mental health and anger issues which translated into domestic violence incidents as the primary reasons for the Children's removal. The social worker, however, believed that Father's prognosis in reunification services was "fair" because he was willing to participate in services and cooperative with CFS.

Moreover, the social worker noted that Father initiated services on his own by enrolling in a domestic violence class, anger management classes, and parenting education classes. Father also received group therapy through VA services. Father maintained frequent communication with CFS and advocated for his reunification services and visits. During the visits, Father was appropriate. On October 21, 2020, the social worker observed a visit between the Children and Father. Father brought dinner, desserts, and games to the visit. He properly redirected the Children when necessary. The social worker observed the Children being bonded with Father.

The social worker further reported that Mother was compliant with her services. She remained a source of stability for the Children and was committed to their care.

At the jurisdiction/disposition hearing on October 20, 2020, Mother submitted on the petition and provided an oral wavier of rights. CFS moved to dismiss the (b-2)

5

allegation against Mother.  The juvenile court sustained the remainder of the petition amending (b-4) to reflect that " 'Father has been diagnosed with depression and anxiety.' "  The court ordered Mother to participate in family maintenance and Father to participate in family reunification.

By April 29, 2021, CFS recommended to continue family reunification services to Father.  According to a semi-annual status report, Father had completed individual counseling, parenting, anger management, and domestic violence classes.  He was also participating in group therapy through VA services once or twice a month.  Father also returned to work.  He continued to comply with the terms of the restraining order.  He requested unsupervised visits.

In order to assess the safety of the request for unsupervised visits, the social worker contacted one of Father's therapists, a clinical social worker.  The therapist was working with Father and aware of his mental health history.  The therapist did not believe that Father exhibited any self-injurious signs and was not likely to attempt self-harm.  In the therapist's opinion, unsupervised visits with the children were "appropriate."  The therapist also believed that Father would seek help in the future if he needed help.

Father's progress report from group therapy lauded his consistent participation, he was open and engaged during sessions, and he provided emotional support to peers.  Father also gained insight into the child development milestones and appropriate parenting, the cycle of violence, dynamics of personal relationships, and verbalized his understanding of anger management techniques.

Mother, however, did not believe that six months of services were sufficient to recover from the trauma of incidents that led to the Children's removal. She reported that "her current concern is if [Father] is stable enough to have the children unsupervised. [Mother] reported she is worried about [Father']s mental health." She also did not believe that the gun discharge was an accident; "from everything [Father] has told her about guns there should not have been an accident and because of that, she is still worried about her children's well-being."

On May 13, 2021, CFS submitted a report titled "additional information to the court." In the report, the social worker provided that Father attended psychotherapy with a licensed clinical psychologist, Dr. Schnose. Dr. Schnose opined that Father made "good progress during the course of [treatment]." Father also provided the social worker with medical records listing his psychotropic medications.

The social worker also reported that Father continued to attend 12-step meetings to help him with his goals to remain sober. Father provided medical records from the Department of Veterans' Affairs, which indicated that Father had a prior cocaine and methamphetamine addiction, but discontinued the use for "more than 6 months." CFS was concerned because Father did not disclose his prior substance abuse. CFS was also concerned because Father had missed some counseling appointments in the last six months.

Therefore, CFS requested that the proposed family law orders reflect that Father should complete a substance abuse program. The proposed order also included a recommendation of joint legal custody to Mother and Father.

On May 17, 2021, the juvenile court held a contested section 364 hearing. Mother objected to the order of joint legal custody. She argued that given Father's substance abuse and failure to benefit from therapy, Mother should be awarded sole legal custody. Mother speculated that "if Father is given joint legal custody, he will interfere with every decision Mother tries to make for their children." Father's counsel argued that here was no evidence that the parents could not work together.

After reviewing the evidence and hearing arguments from the parties, the juvenile court ordered joint legal custody to both parents, sole physical custody to mother, and supervised visitation to father.

On May 18, 2021, Mother filed a timely notice of appeal challenging the order awarding joint legal custody.

## DISCUSSION

Mother's sole argument on appeal is that the juvenile court erred in granting Father joint legal custody.

Section 362.4 "empowers the juvenile court, if it terminates its jurisdiction over a dependent minor, to issue 'an order determining the custody of, or visitation with, the child.' [Citation.] If there is a pending marital or paternity proceeding relating to the child, the custody order will be transferred to the existing family court file. [Citation.] Otherwise, the order may be used to open a new file in the superior court of the county in which the parent who has been given custody resides. [Citation.] The order shall continue 'until modified or terminated by a subsequent order of the superior court.' " (*In re C.W.* (2019) 33 Cal.App.5th 835, 862-863.) "An order entered pursuant to section

8

362.4 is commonly referred to as an 'exit order.' " (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 269.)

We review an exit order for abuse of discretion. (*In re C.W.*, *supra*, 33 Cal.App.5th at p. 863; see also *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 ["The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test"].) "An abuse of discretion occurs when the [juvenile] court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." (*In re Leticia S.* (2001) 92 Cal.App.4th 378, 381.) A court can also abuse its discretion by committing legal error. (See *In re Charlisse C.* (2008) 45 Cal.4th 145, 161.)

In this case, Mother contends that "the juvenile court abused its discretion in awarding Father joint legal custody since Father's mental health continued to pose a serious risk to the family."

When issuing exit orders, the court's primary focus is on the best interest of the child. (*In re Nicholas H.*, *supra*, 112 Cal.App.4th at p. 268.) The court has a special responsibility to the child as a *parens patriae* and must look to the totality of the child's circumstances when making its custody orders. (*In re C.M.* (2019) 38 Cal.App.5th 101, 109.)

Here, the juvenile court awarded joint legal custody to Mother and Father, but awarded sole physical and primary custody to Mother. We cannot say that the court's order was arbitrary, capricious, or patently absurd. The court considered the evidence presented, heard argument of counsel, then made a thoughtful decision. When making its

9

decision, the court noted that the restraining order against Father was in effect until October 16, 2021. The court went on to state: "The Court notes that the restraining order is very clear with respect to the—at page 6 of that domestic violence restraining order, [Mother's counsel], that [Father] is not to have guns, firearms, and ammunition. Those are very specifically what he cannot own or possess or buy or try to buy. [¶] So the Court understands from, I believe, one of the reports that indicated that Mother can seek a renewal of that restraining order prior to its expiration. [¶] . . . [¶] . . . Okay. The Court's going to keep joint legal for [Father] and [Mother]. The—the Court hopes that [Father] is able to seek some care and consistently address the mental health issues, and for that matter, the substance abuse issues which he has not raised or mentioned to the social worker in this case."

Thereafter, the court ordered custody as follows: "Joint legal custody to [Mother] and to [Father], physical custody with Mother, primary residence with Mother." The court went on to award supervised visitations for Father. The court noted that Father needed to complete a substance abuse program as the reason for supervised visits. The court clearly considered the evidence it had and fashioned an order that was in the best interest of the Children.

Nonetheless, Mother contends that the court abused its discretion because Father's mental health continued to pose a serious risk to the family. We disagree with Mother's argument. In support of her argument, Mother cites *In re Jennifer R.* (1993) 14 Cal.App.4th 705 (*Jennifer R.*). In *Jennifer R.*, the juvenile court awarded the father sole legal and physical custody of the one-year-old child. In addressing the mother's request

10

for joint legal custody, the court referred to a report from the mother's therapist, which indicated that the mother was not in a position to be helpful in making decisions for the child, and that those decisions were more appropriately left in the hands of the father. (*Id.* at p. 710.) On appeal, the court determined that the mother's inability to take care of herself and her children, her failure to make progress in overcoming the problems leading to the child's removal, and her inconsistency and inappropriateness in visitation, all amply supported the juvenile court's decision that legal custody should not be vested in mother. (*Id.* at p. 713.)

Here, Mother argues that Father exhibited similar problematic behaviors to the mother in *Jennifer R.* Mother contends that "[l]ike the mother in *Jennifer R.*, father in this case also had a history of substance abuse which included cocaine and methamphetamine. [Citations.] Because father was covertly trying to hide his usage, however, the extent of father's problem was truly unknown. [Citations.] Father seemed secretive and manipulative so while he appeared to be cooperating with services on the surface, he really wasn't cooperating." Under the circumstances, Mother argues, the juvenile court abused its discretion in granting Father joint legal custody of the Children.

However, the facts of the present matter are distinguishable from the facts in *Jennifer R.* Unlike the child in *Jennifer R.*, who was an infant when the dependency petition was filed, the Children in this case were 12, 10, and 5 years of age at the time the dependency petition was filed on their behalf. Father consistently visited with the Children during the dependency. And prior to the dependency, the Children lived with both Father and Mother. It was permissible for the juvenile court to consider the nature

11

and the amount of contact between Father and the Children in making its custody order. (See Fam. Code, § 3011.) Moreover, in this case, the evidence showed that Father made progress in his services; he had completed individual counseling, parenting classes, anger management classes, and domestic violence classes. He also complied with the terms of the restraining order. Furthermore, Father's visits with the Children were always appropriate and the Children were bonded with Father. While mother argues that Father's history of mental illness, drug use, and aggressive behavior rendered him unfit to be a custodial parent, we note that the juvenile court considered Father's troubling behaviors by granting Mother sole physical and custodial custody. As noted by the *Jennifer R.* court, Father's history of aggression is more relevant to his fitness for physical custody than legal custody. (*Jennifer R.*, *supra*, 14 Cal.App.4th at p. 711, fn. 2.) It was well within the court's discretion to allow Father joint legal custody; thus we will not disturb the ruling on appeal. In sum, we find that the trial court did not err in granting joint legal custody to both Mother and Father.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

RAMIREZ

P. J.

FIELDS

J.