Filed 10/21/21  In re C.J. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re C.J., a Person Coming Under the Juvenile Court Law. | B310616 (Los Angeles County Super. Ct. No. 20CCJP02587A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. T.J, Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Judge Pro Tempore. Affirmed.

Zaragoza Law Office and Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Brian Mahler, Deputy County Counsel for Plaintiff and Respondent.

_____

T.J. (father) appeals the juvenile court's disposition order. Father's sole contention on appeal is that the juvenile court abused its discretion when it made an order placing his daughter, C.J. (minor), with C.H. (mother), rather than with father.[1] The Los Angeles County Department of Children and Family Services (Department) contends the disposition order was within the court's broad discretion. Finding no abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and father separated when minor (born February 2011) was six months old. A December 2013 restraining order protecting minor, mother, and maternal grandmother from father was subsequently modified by a May 2014 family law order giving father sole legal and physical custody of minor, with mother having reasonable visitation. There is conflicting evidence regarding subsequent interactions between mother and father, but minor remained in California with mother when father moved to Texas, where he remarried. At the time minor

_____

[1] Mother is not a party to this appeal.

2

was placed with father in May of 2020, father had a stepson (age 13) and two sons (ages 6 and 8). The two younger boys are minor's half-siblings.

Minor has diagnoses for autism, ADHD, anxiety, emotional disturbance, and mild intellectual disability. The Department previously investigated mother after minor, who was seven at the time and enrolled in a special needs class, reported that mother hits her and calls her bad names. The referral was closed as unfounded.

Mother was arrested on May 6, 2020, after a physical altercation between mother and maternal grandmother. Minor and maternal grandmother reported that mother was repeatedly hitting minor with a charging cord, and after maternal grandmother intervened, mother became violent towards maternal grandmother. Minor reported that when mother drinks alcohol, she becomes very irritable and hits minor. Maternal grandmother reported that mother drinks frequently, to the point of passing out. Mother denied any alcohol use. Mother provided father's name and stated he lived in Texas, but could not provide his birthdate or contact information.

A social worker spoke with father by telephone on May 8, 2020. Father reported there was no custody order. He said he had frequent phone contact with minor, but did not suspect any abuse. Father wanted what was best for minor and wanted to provide minor with a safe, stable home in Texas. Father later told the Department he was granted full custody of minor in 2013, but mother never released minor to him.

During a subsequent call a few days later, father said he was aware of minor's disabilities and was willing and able to care for her. He acknowledged he had not taken steps to visit minor

since she was six months old.  Father had a forty-hour work week, working nights.  His current wife (stepmother) would be the one caring for minor when he was at work or not available.  Stepmother spoke to the social worker and reported she was aware of minor's mental health and developmental issues, and she was willing to care for minor as if minor was stepmother's own child.

Father did not appear at the detention hearing on May 13, 2020, but the court ordered minor detained from mother, and declared father to be minor's presumed father.  The court also made services available to mother, including individual counseling, parenting, and substance abuse counseling and testing.  On May 21, 2020, the court ordered minor released to father after the Department conducted the appropriate background checks.  The court ordered monitored telephone or video visits for mother, as well as monitored in-person visits if mother was able to travel to Texas and a monitor was available.  The court also ordered the Department to work with father to obtain a developmental assessment and a medication review with a psychiatrist to ensure minor's medications were correct and necessary.

The appellate record does not contain any reports from the Department between May and October 2020.

On October 5, 2020, the Department filed a First Amended Petition, adding allegations that father had obtained an order for custody of minor, failed to obtain custody, and failed to protect minor from mother's physical abuse when he knew or reasonably should have known of the abuse.  On the same day, the Department filed a supplemental report.  According to the report, mother was enrolled in classes and, as of September 10, 2020,

had completed seven parenting classes and five anger management classes. Father was inconsistent with making minor available for phone or video visits with mother. The social worker expressed concern that father may be coaching minor; father had stated minor was afraid of mother and did not want to return to her care, but minor's statements were different during calls with mother. The Department reported concerns about whether father had been truthful about his residence address. When father was not reachable in connection with a scheduled in-person visit by mother in August 2020, the police conducted a welfare check at father's given address and were told that father did not reside there. Father eventually made minor available for an in-person visit. Although there was no evidence that mother was a flight risk, father claimed he was scared mother would flee with the child. The Department also expressed "concern that the father is more focused on proving the mother wrong and giving mother a hard time than addressing the needs of the child. Father appears to minimize and not understand the significance of the child's emotional and mental needs." Minor had a mental health assessment scheduled for September 14, 2020, and her enrollment in therapy was pending.

On October 8, 2020, the court ordered the Department to assess the appropriateness of minor's placement with father, based on concerns that father might be interfering with mother's reunification efforts and was not responsive to contacts by the Department.

On October 13, 2020, the Department reported that father was not adequately addressing minor's mental health needs, as she was not enrolled in therapy or taking any psychotropic medications, even though minor needed ongoing support and

5

services to address her emotional and behavioral issues. Mother was in contact with minor's prior school, a non-public school designed for children with special needs. Mother was remorseful for physically abusing minor. She planned to enroll minor in joint behavioral therapy and regional center services. Based on the Department's assessment, it appeared to be in minor's best interests to return to mother, with intensive services and unannounced visits.

On November 3, 2020, the Department reported that father had enrolled minor in special education at a new school on October 20, 2020. According to father, minor has been to the doctor and the dentist, and needed to be re-evaluated for mental health services, but father had not provided any records documenting this information. Father was not enrolled in any services and failed to consistently make the minor available. The social worker monitoring mother's phone visits with minor reported that minor wanted to return to mother's care.

Father took minor for a mental health evaluation in Texas on October 29, 2020. Father completed an intake form denying minor had any behavioral issues, aggression, or outbursts since being placed with her father in May/June 2020. Her only reported symptoms were nightmares and sleep difficulties revolving around abuse by mother, and anxiety involving going back to mother. The chief complaint involved concern about minor being overly medicated and getting the right treatment for her trauma.

At the November 10, 2020 adjudication hearing, mother entered a no contest plea to amended allegations that she used inappropriate physical discipline and engaged in a violent altercation with maternal grandmother. Minor was adjudicated

6

a dependent under Welfare and Institutions Code section 300, subdivision (b), based upon mother's plea.[2]  The court dismissed the count alleging mother's alcohol abuse.  Over father's objection, the court sustained the allegation that father failed to protect minor from mother's actions.

At the request of counsel for minor and the Department, and over the father's objection, the court ordered a 29-day visit for minor with mother, subject to frequent unannounced visits by the Department to ensure minor's safety.

When the social worker arrived in Texas on November 16, 2020, minor declined to go back to California with the social worker.  A different social worker was able to bring minor to California on November 24, 2020.  Although minor was initially reluctant, she was excited upon arriving at the airport, and spoke with mother extensively by phone.  According to a December 1, 2020 last minute information, minor was doing well with no concerns since arriving in California.

During an interview on November 30, 2020, minor disclosed statements by father and stepmother that increased the Department's concerns about minor remaining in father's care.  According to minor, father was always at work and she was sometimes left in the care of her 13-year-old stepbrother, who asked her if she wanted to have sex.  When she said no, he called her vulgar names, and body slammed and hit her.  Minor reported that stepmother told minor not to tell the social worker anything and "if my kids get taken its gone [sic] be a problem."  Minor heard father tell stepmother that if the Department picks

---

[2] All statutory references are to the Welfare and Institutions Code, unless stated otherwise.

7

minor up, he would never see her again. The Department recommended that minor be returned to mother's care, as such an arrangement would be in minor's best interests.

In a last minute information report dated December 8, 2020, the Department reported that minor again stated stepbrother had been verbally abusive towards her, and stepmother said if minor said anything about any of her children to the social worker, stepmother would have to threaten the social worker, and she would not let minor ruin her life. Minor wanted to be able to stay with mother, but also visit father. When the social worker asked father about minor's statements about her stepbrother, father accused the social worker of reporting false information and suggested minor should take a polygraph test, as she might be a habitual liar like her mother. Father denied leaving minor at home alone with stepbrother, but minor reported father would leave stepbrother in charge when father had overtime. Father also told the social worker that minor was his worst child because she had not been raised in his home with structure; father recounted an incident where minor made a sexualized statement at school.

A January 4, 2021 last minute information report stated that on November 13, 2020, just days after the dependency court's November 10, 2020 order authorizing a month-long visit with mother, father filed a child support determination in Texas using the 2014 custody order, with no mention of the current dependency proceedings.

A January 12, 2021 last minute information report recounted that when the social worker called on November 24, 2020 to inform father that she would be traveling to Texas the following day to pick up minor for her visit with mother, father

began to scream and yell, saying, "you ain't shit. You have no heart. I got something for you, you better watch out." On November 30, 2020, minor told the social worker she was scared because father had said mean things about the social worker and that he was going to shoot the social worker with a glock-9.

A January 27, 2021 last minute information report summarized an unannounced visit on January 19, 2021 by a new social worker. Minor was eating and sleeping well, and taking her medications with no adverse reactions. Minor wanted to have a visit with her father, and reported having normal sibling fights when she previously lived in Texas. The Department learned father had enrolled in parenting and counseling sessions. Father felt the prior social worker was biased against him and did not keep him informed about his daughter's case. Father also felt minor was not safe with mother, and he should be given the opportunity to care for minor.

At the January 27, 2021 disposition hearing, father's attorney called minor and father as witnesses. Minor initially had difficulty testifying, but ultimately testified that she liked visiting with her father, but she did not like the treatment she received from her stepbrother, who called her names and hit her. Minor also testified about the social workers who came to Texas to take her to visit mother, and described mother as being mean to minor when minor expressed a desire to live with father. When asked if her father said mean things about mother, minor initially said she was too scared to answer the question, but then testified that father was mad at mother for taking minor away. On cross-examination by mother's attorney, minor testified that her stepmother told minor not to tell the social workers what was happening in the home because stepmother did not want her sons

9

taken away.  Minor also testified she told a therapist that father had threatened to hurt mother if minor said she didn't want to live with father.

On direct examination by his attorney, father testified that he had given the correct address to social workers, that the confusion about minor's return to California was due to lack of communication by the social workers, and minor was never left alone in the home.  He also testified that based on what minor said during phone visits, he did not think minor would be safe staying with mother.  On cross-examination by mother's attorney, father denied certain statements in the Department reports; father testified the social worker had falsely reported that minor accused his stepson of making advances, and denied discussing case issues with minor or telling the social worker that minor was his worst child.

The court expressed concern that both parents were putting their own agendas before minor's best interest, and minor's testimony revealed that she seemed scared of disappointing either parent.  The court admonished both parents to put minor's well-being first.  The court found there were reasonable means to prevent removal, so long as the parents were in 100 percent compliance with their court-ordered case plans.  The court noted that while both households had a lot of issues, "the child will best be served remaining primarily in the home-of-parent/mother because the Department is in a position to make frequent unannounced home visits."  The court ordered minor's primary residence with mother, with father having custody for one weekend in February and all of summer break.  In addition, parents would alternate custody of minor on Thanksgiving and Christmas, switching each year.  When mother asked the court to

10

require that minor not be alone with stepbrother when she was visiting father in Texas, father initially protested that conditions were being imposed based on something that never happened, but then agreed.  Father filed a timely notice of appeal.

## DISCUSSION

Father contends that the trial court's "home of parent" order placing minor with mother, rather than with father, was an abuse of discretion.  We disagree.

*Relevant law and standard of review*

After the juvenile court has declared a child to be a dependent described by section 300, "the court may limit the control to be exercised over the dependent child by any parent." (§ 361, subd. (a).)  The court has the power to issue "all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of [a dependent] child" and to "direct any reasonable orders to the parents or guardians of [that] child." (§ 362, subds. (a) & (d).)  "In making its disposition orders the court has broad discretion to resolve issues regarding the custody and control of the child, including deciding where the child will live while under the court's supervision."  (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 346 (*Anthony Q*).)  "'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly.'" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.)  "'The best interest of the child is the fundamental goal of the juvenile dependency system, underlying . . . child safety, family

11

preservation, and timely permanency and stability.' [Citation.] ""Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult."" [Citation.] Stability and continuity of care are primary considerations in determining the child's best interest. [Citation.] Custody determinations in dependency proceedings are 'committed to the sound discretion of the juvenile court,' and such rulings 'should not be disturbed on appeal unless an abuse of discretion is clearly established.' [Citation.]" (*In re J.M.* (2020) 44 Cal.App.5th 707, 718.) ""The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)

*Analysis*

We find no abuse of discretion in the court's decision to place minor with mother, rather than father. We reject father's attempt to apply family law custody principles to a dependency case in the juvenile court. We also reject father's effort to highlight evidence against mother to show an abuse of discretion, while father's argument simultaneously minimizes evidence showing placement with father would not be in minor's best interests.

1. Family law principles do not apply in juvenile law.

Father's first argument is that the family law court had already granted father custody of minor in 2014, and that the

12

dependency court placed minor in father's physical custody after the May 2020 hearing. Acknowledging that family law principles regarding custody do not apply in dependency proceedings, father nevertheless cites to a family law case, arguing that once a custodial arrangement has been determined to be in a child's best interests, custody should not be re-examined unless there is a significant change that "'"indicates that a different arrangement would be in the child's best interests." [Citation.]'" (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1088.) However, as father himself points out, when making its decision about minor's placement, the juvenile court "has a special responsibility to the child as *parens patriae* and must look to the totality of a child's circumstances." (*In re Chantal S.* (1996) 13 Cal.4th 196, 201 (*Chantal S*).) "Although both the family court and the juvenile court focus on the best interests of the child significant differences exist. . . . The presumption of parental fitness that underlies custody law in the family court just does not apply to dependency cases. Rather the juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions." (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712; see also *In re C.M.* (2019) 38 Cal.App.5th 101, 108 [while both family and juvenile courts make decisions on custody and visitation, they "operate under separate statutory schemes and serve distinct purposes"].)

Once a child has been adjudged a dependent, the juvenile court has broad discretion to make placement and custody orders that are in the child's best interests, taking the totality of the circumstances into consideration. (*Chantal S., supra,* 13 Cal.4th at p. 201; *Anthony Q., supra,* 5 Cal.App.5th at p. 346.)

13

Accordingly, presumptions applicable to family law custody determinations are not applicable or relevant here.

2. Considering the totality of circumstances, father has not shown an abuse of discretion.

Father takes a multi-pronged approach to arguing that the dependency court's placement decision was an abuse of discretion. He first points to mother's statements denying she abused alcohol and denying she physically harmed minor, arguing that her statements contradicted well-documented evidence that she used alcohol and became verbally and physically abusive when she was drinking. Next, he argues that he—not mother—was the parent best situated to protect and care for minor. He also points to the times in minor's testimony where she stated a preference to live with father. Finally, without citing legal authority to support his position, father argues that the court abused its discretion when it based its decision on the Department's ability to make unannounced home visits. None of father's arguments persuade us that the dependency court exceeded its broad discretion to make disposition orders that serve minor's best interests.

The totality of minor's circumstances in this case were quite complex. Minor had several mental health and behavioral diagnoses before the case began, and there was conflicting evidence on the extent to which father had been involved in minor's care before the Department became involved. Father focuses on evidence that mother called minor vulgar names and would become abusive when she drank alcohol, arguing mother had failed to correct these problems. However, there was also

evidence that mother sought father's assistance before the dependency case began, and he had not responded. In addition, by the time of the disposition hearing, mother appeared remorseful for her actions and motivated to change. She was enrolled and actively participating in services and had engaged with minor's service providers. In contrast, although minor was in father's custody beginning in May 2020, she did not have a mental health evaluation until late October 2020. Father testified his 13-year-old stepson was never left alone with minor unsupervised, and father believed minor had falsely accused the stepson of sexual advances and aggressive behavior. Father also testified the social worker lied about minor's statements and father's responsiveness to mother's visits and other concerns; in announcing its decision, the court stated it found father's testimony on these points not credible. As a reviewing court, we do not resolve evidentiary conflicts or evaluate the credibility of witnesses. (*In re Caden C.* (2021) 11 Cal.5th 614, 640.)

While minor did testify she wanted to live with father, she also testified that her stepbrother had previously acted abusively towards her and she was scared of him. The court observed that it was challenging to discern the truth from minor's testimony, as she appeared to be scared of disappointing either parent.

Rather than giving a balanced appraisal of the evidence underlying the court's decision, the argument portion of father's brief focuses on evidence highlighting mother's flaws. The sustained allegations, as well as the court's admonitions to both parents at the disposition hearing demonstrate that the court was fully aware of mother's challenges, but was equally aware of the risks posed to minor's best interests if the court placed minor with father in Texas. We find the court acted well within its

broad discretion when it ordered minor placed with mother during the school year, with frequent unannounced visits to ensure minor's safety, and specified visits with father in Texas, including for a lengthy time period over the summer.

## DISPOSITION

The juvenile court's disposition order placing minor with mother is affirmed.

MOOR, J.

We concur:

RUBIN, P.J.

BAKER, J.

16