Filed 7/8/22  In re Q.T. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Q.T. et al., Persons Coming Under the Juvenile Court Law. | B314021 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TONY T.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. Nos. 20CCJP04657A, 20CCJP04657B) |

APPEAL from an order of the Superior Court of Los Angeles County, Stacy Wiese, Judge.  Affirmed.

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

_____

Tony T. (father) appeals from the juvenile court's order terminating jurisdiction over his minor sons, Q.T. and A.T., and granting sole physical custody to their mother with unmonitored visitation to father. On appeal, father argues the juvenile court abused its discretion in not allowing father to return to the family's home until he completed his case plan. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### I. Initiation of dependency proceedings

"In August 2020, the El Monte Police Department executed search warrants on father's home and his female companion's home after receiving information about father distributing child pornography. Father resided with the mother and his children. Father also had a female companion and sometimes spent the night at her home. While executing the warrant, the police recovered child pornography videos on father's phone. These videos included 21 files depicting child pornography of young girls, ages two to five, which police located in a file folder in father's phone. A detective concluded that father was looking for child pornography videos and purposefully saved them onto his phone based on the volume of videos and where the files were saved on father's phone.

_____

[1] A portion of the factual and procedural background is taken from this court's prior opinion in *In re Q.T.* (Dec. 17, 2021, B310598) [nonpub. opn.]. On this court's own motion, we take judicial notice of our prior unpublished opinion. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

"A detective interviewed father after law enforcement executed a search warrant at the family home. Father conceded that he sent a child pornography video to his female companion. Father denied having any further child pornography other than the single video.

"After his arrest, the El Monte Police Department again interviewed father. Father described publishing a video depicting an 'adult and child' and described it further as '[s]exual abuse, like intercourse.' He estimated that the girl in the video was 'around 3' years old and stated that he received the video from a Facebook group. When asked about his motivations for sending the video to his female companion, father said that he sent the video to her because it was 'very interesting' and because he wanted to have sex with his companion. Father described storing child pornography on his phone from March 2020 to August 2020, a period of roughly five months, although he denied enjoying child pornography. In executing a search warrant with internet service providers, the El Monte Police Department concluded that father uploaded the child pornography video that he sent to his female companion from the internet protocol (IP) address associated with the family home.

"While executing the search warrant at the home of father's female companion, law enforcement found 25 ecstasy pills and 21 vials of ketamine.

"In an interview with the Los Angeles County Department of Children and Family Services (DCFS) . . . , father said that he accidentally clicked on a link from a Facebook group without realizing it was child pornography. He reported that the videos automatically downloaded to his phone. Father also denied

watching the child pornography videos, with the exception of the video that he sent to his female companion. [¶] . . . [¶]

"In September 2020, . . . DCFS filed a Welfare and Institutions Code[2] section 300 petition regarding Q.T. and A.T. Under section 300, subdivisions (b)(1) and (d), . . . DCFS alleged that father's possession of child pornography and the mother's failure to protect the children from father established a basis for jurisdiction. Under section 300, subdivision (b)(1), . . . DCFS alleged that father's drug abuse and mother's failure to protect the children from father's drug abuse created a second basis for jurisdiction.

"On September 8, 2020, at the detention hearing, the juvenile court detained the children from father and placed the children in the mother's care. The juvenile court ordered that father was to have monitored visitation with children." (*In re Q.T., supra*, B310598.)

## II. Jurisdiction and disposition hearing

"In . . . DCFS's interview with father for the jurisdiction and disposition report, he described looking for videos online which were 'strange and weird' during the COVID-19 pandemic. Father said that he randomly clicked on videos on a pornography website and some of them depicted child pornography. He said he clicked on one video depicting an adult male having sex with a two-year-old girl. Father admitted watching the whole video, which he estimated lasted 1.5 minutes. He said the 1.5-minute video 'goes by fast, and it is not a long time.' He denied being sexually aroused by the child pornography. In addition, father

---

[2] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

4

indicated that he placed the child pornography in a secure file protected by a password to prevent his children from accessing the child pornography. Father also denied knowing that it was illegal to possess child pornography.

"In the same report, . . . DCFS noted that father was engaging in therapy to address both child pornography and drugs prior to the disposition hearing. From father's self-reporting, the therapist understood that father accidentally looked at one piece of child pornography one time. The therapist was surprised to learn from . . . DCFS that there were 21 child pornography videos and that they involved children under the age of five.

"In the jurisdiction and disposition report, father said he began using drugs during the COVID-19 pandemic after he lost his job. Father stated that he would spend the night with his female companion and used the substances at her home. He said he would return to his home when he was no longer under the influence. When visiting his companion, father said he took a quarter pill of ecstasy to stay awake and used marijuana for recreational purposes. Father also indicated that he used ketamine to calm himself and to help him sleep. In addition, he also indicated that he stopped using drugs after . . . DCFS first interviewed him. Father voluntarily tested twice for . . . DCFS prior to the disposition hearing, and both tests were negative. The mother said she had no knowledge that father was using drugs and that he did not use around her or the children.

"Prior to the jurisdiction and disposition hearing, both parents participated in a planning meeting with two DCFS social workers. At the meeting, father indicated that he had a personal goal to stop abusing drugs." (*In re Q.T., supra*, B310598.)

5

"At the time of the jurisdiction and disposition hearing, father was charged with two crimes related to child pornography." (*In re Q.T.*, *supra*, B310598.)

"On January 12, 2021, the juvenile court presided over the jurisdiction and disposition hearing. The parties asked the court to consider written exhibits and did not offer any testimony. Regarding father, the juvenile court sustained the allegations with regard to both the child pornography and drug abuse theories. The juvenile court made credibility determinations against father's statements regarding the number of child pornography videos he possessed, his motivations for looking at the videos, and his knowledge of the legality of his actions. Regarding the drug allegations, the juvenile court only noted that it was sustaining the entirety of the allegations against father. For father's case plan, the juvenile court ordered father to do a sex abuse program for perpetrators, individual counseling to address child pornography, a parenting program, and ordered drug testing with the matter to be 'walked on' for hearing if there were any missed or dirty drug tests." (*In re Q.T.*, *supra*, B310598.)

### III. Six-month status review report

In its July 2021 status review report, DCFS stated that the children continued to reside with their mother in the family's home, and that no concerns had been reported. The mother was receiving family maintenance services, and had been compliant with her case plan. She had completed a family preservation program, and continued to participate in a parenting education program and individual counseling services. The mother was meeting all of the children's needs, and consistently providing them with appropriate care and supervision.

DCFS reported that father also had been overall compliant with his case plan. He had tested negative for drugs and alcohol in his on-demand tests. He was attending a parenting education program, and had completed eight of 10 sessions. Father's therapist indicated that father had been attending individual counseling every two weeks since September 2020. With DCFS's approval, the individual counseling program included sexual abuse counseling for perpetrators. In a brief letter submitted to DCFS, the therapist stated that father "has participated well in counseling" by "sharing openly" and "gaining insights and lessons on how to improve in his role as a husband and father after reflecting on recent events leading to criminal and DCFS court cases." The therapist also was providing conjoint counseling to the parents, and they had attended four sessions since September 2020. The primary focus of the conjoint therapy was to address issues in the marriage due to father's infidelity.

Father had been attending monitored visits with the children at a local park six hours per week. Father was cooperative and compliant with his visitation, and no concerns had been reported. The children expressed excitement and joy when visiting with father, and appeared to be comfortable with him. Effective June 20, 2021, DCFS liberalized father's visits to unmonitored. At father's request, the visits took place every Sunday from 2:00 p.m. to 8:00 p.m. to accommodate his work schedule.

In its report, DCFS noted that both the parents and the children wanted father to return to the family's home. The parents also were requesting that the juvenile court terminate its jurisdiction at the next hearing with a family law order, and stated that they were willing to abide by the terms of such order.

Father had pleaded not guilty to the charges involving child pornography, and the criminal case against him remained pending.

DCFS recommended the juvenile court terminate jurisdiction over the children with a family law order granting sole physical to the mother, legal custody to both parents, and unmonitored visitation to father. DCFS assessed the risk to the children in mother's care as "LOW" because no new referrals regarding the family were being investigated, and both parents continued to participate in services and to show improvement in rebuilding their relationship. DCFS recommended, however, that father remain out of the family's home because his criminal case had not been resolved, and he had not completed his case plan. In particular, DCFS wanted father to complete his parenting education program and to continue attending individual counseling to address sexual abuse counseling issues.

## IV.  Termination of jurisdiction

On July 13, 2021, the juvenile court held a six-month review hearing pursuant to section 364. Counsel for the mother and counsel for the children submitted on DCFS's recommendation that the court terminate jurisdiction and issue a family law order granting sole physical custody to mother, joint legal custody to both parents, and unmonitored visits to father. Counsel for DCFS opposed father's request to return to the family's home because he had not completed his case plan. Counsel for the children also opposed the request, noting that, while the children missed father, he had only recently begun unmonitored visits and he still needed to complete his court-ordered services. Counsel for father continued to object to

8

the court's jurisdiction and requested the children be immediately returned to father's custody.

The juvenile court ordered the termination of jurisdiction over the children pending the receipt of a custody order. In accordance with DCFS's recommendation, the custody order granted joint legal custody to both parents, sole physical custody to mother, and unmonitored visitation to father a minimum of six hours per week. In adopting DCFS's recommendation that father not return to the family's home at that time, the court noted that father had not completed his case plan and had only begun to have unmonitored visits with the children. On July 16, 2021, the court signed the custody order and terminated its jurisdiction. The custody order provided that father could petition the family court for a change in custody once he had completed a parenting education program and individual counseling to address sexual abuse counseling for perpetrators.

Father filed a timely appeal.

## DISCUSSION

On appeal, father solely challenges the portion of the juvenile court's custody order limiting his contact with the children to unmonitored visitation. Father specifically contends the court abused its discretion in denying his request to return to the family's home because the children were at low risk of abuse, and it was in their best interests for father to reside with them.

## I. Governing legal principles

"Once a child has been adjudged a dependent of the juvenile court pursuant . . . to section 300, . . . 'any issues regarding custodial rights between his or her parents shall be determined solely by the juvenile court . . . so long as the child remains a dependent of the juvenile court.' " (*In re Anna T.*

(2020) 55 Cal.App.5th 870, 876; § 302, subd. (c).) Section 364, subdivision (a) requires the juvenile court to conduct a review hearing every six months for a dependent child who has been placed in the physical custody of a parent. (See *In re T.S.* (2020) 52 Cal.App.5th 503, 512.) At a hearing held pursuant to section 364, the juvenile court must terminate jurisdiction over the dependent child unless the conditions that initially justified jurisdiction still exist or are likely to exist if supervision is withdrawn. (§ 364, subd. (c).)

When terminating jurisdiction over a dependent child, section 362.4, subdivision (a) authorizes the juvenile court to issue "an order determining the custody of, or visitation with, the child." Section 362.4, subdivision (b) specifies that the order "shall continue until modified or terminated by a subsequent order of the superior court," and directs that the order be filed in a pending family court proceeding (*id.*, subd. (b)) or if there is none, as part of a new family court file (*id.*, subd. (c)).

In making a custody or visitation order pursuant to section 362.4, commonly referred to as an " 'exit order,' " the juvenile court's " 'focus and primary consideration must always be the best interests of the child.' " (*In re T.S.*, *supra*, 52 Cal.App.5th at p. 513.) The juvenile court is not restrained by any preferences or presumptions that are ordinarily applicable in family court. (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268; accord, *In re C.M.* (2019) 38 Cal.App.5th 101, 110 [" 'presumption of parental fitness that underlies custody law in the family court just does not apply to dependency case' "].) We review the juvenile court's decision to terminate jurisdiction and to issue an exit order for abuse of discretion. (*In re C.W.* (2019) 33 Cal.App.5th 835, 863; *In re M.R.* (2017) 7 Cal.App.5th 886,

10

902.)  We " 'may not disturb the order unless the court
" ' "exceeded the limits of legal discretion by making an arbitrary,
capricious, or patently absurd determination." ' " ' " (*In re M.R.*,
at p. 902.)

## II.  The juvenile court did not abuse its discretion in denying father's request to return to the family's home prior to completing his case plan

In terminating jurisdiction and issuing a custody exit order,
the juvenile court granted father unmonitored visitation with the
children a minimum of six hours per week.  While the juvenile
court denied father's request to return to the family's home at
that time, it noted that father could seek a modification of the
order in family court once he had completed his case plan.  We
conclude the juvenile court acted well within its discretion in
fashioning the custody order.

The record reflects that, at the time of the six-month review
hearing, the children were doing well in their mother's care, and
she was continuing to meet all of their physical and emotional
needs.  Father had attended eight of 10 parenting education
sessions and four conjoint counseling sessions with the mother,
and he was participating in individual counseling that included
sexual abuse counseling for perpetrators.  His weekly visits with
the children had been monitored until three weeks prior to the
status review hearing, when DCFS had liberalized the visitation
schedule to unmonitored day visits.  Given that father had not
completed his case plan and had only recently transitioned to
unmonitored visits, the juvenile court reasonably could conclude
it was in the children's best interests that father not reside with
them until he had shown more progress with his court-ordered
services.

11

In challenging the custody order, father argues that "the present case does not involve such serious physical, sexual, or emotional abuse" against his two minor sons, "but only a *risk* of sexual abuse." As our Supreme Court has made clear, however, the juvenile court " 'need not wait until a child is seriously abused or injured to . . . take the steps necessary to protect the child.' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Moreover, " '[s]ome risks may be substantial even if they carry a low degree of probability because the magnitude of the harm is potentially great.' " (*Id.* at p. 778.) This includes the risk that a child may suffer sexual abuse based on the parent's possession of child pornography in the child's home. (*In re S.R.* (2020) 48 Cal.App.5th 204, 224 ["juvenile court correctly found that 'being involved in child pornography or some other hands-on sexual abuse is a great, great danger to the child and would do her extreme harm' "].) Here, father possessed 21 videos depicting child pornography of girls under the age of five, he published one of the videos to his female companion from the family's home IP address, and he connected that video to his desire to have sexual relations with his companion. While DCFS assessed the current risk to the children as low in its six-month status review report, it did so on the basis that the children had been residing with their mother and no safety concerns had been reported during the time they were solely in her care. Indeed, DCFS's recommendation that the juvenile court terminate its jurisdiction with a family law order was contingent upon father remaining out of the family's home until he made more progress with his case plan.

We likewise reject father's contention that the juvenile court did not have any ongoing concerns about the children's

safety in his care when it terminated jurisdiction because it allowed father to have unsupervised contact with the children as part of the custody order.  As the Supreme Court has explained, "there are situations in which a juvenile court may reasonably determine that continued supervision of the minor as a dependent child is not necessary for the child's protection, and at the same time conclude that conditions on visitation are necessary to minimize, if not eliminate, the danger that visits might subject the minor to the same risk of physical abuse or emotional harm that previously led to the dependency adjudication."  (*In re Chantal S.* (1996) 13 Cal.4th 196, 204.)  In such a situation, section 362.4 "authorize[s] the juvenile court to issue an appropriate protective order conditioning custody or visitation on a parent's participation in a counseling program" or other services.  (*Ibid.*)  In this case, the juvenile court granted father unmonitored day visits with the children, but denied his request the children be returned to his physical custody.  The court also stated in its custody order that father could seek modification of the order "once he has completed a parenting education program and individual counseling to address sexual abuse counseling for perpetrators."  Contrary to father's claim, the court did not permit him to have "unconditional contact" with the children.  Instead, the court made clear that father's ability to seek joint physical custody of the children in the future was contingent upon his substantial compliance with his case plan.

Based on the totality of the record, including the seriousness of the sustained allegations against father, his incomplete case plan, and the relative recency of his unsupervised visitation, the juvenile court reasonably could conclude the best interests of the children would be served by

13

awarding sole physical custody to the mother and unmonitored visits to father until father demonstrated greater progress in addressing the issues that led to the dependency proceedings. Father will be able to seek modification of the custody order from the family court if his progress continues. On this record, the juvenile court's order was not an abuse of discretion.

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED.


KIM, J.*


We concur:



EDMON, P. J.



LAVIN, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.