Filed 10/6/22  In re A.S. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E078812 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1900659) |
| v. | OPINION |
| A.S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Cheryl C. Murphy, Judge.  Affirmed.

Suzanne M. Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Teresa K.B. Beecham and Catherine E. Rupp, Deputy County Counsel, for Plaintiff and Respondent.

1

In terminating its dependency jurisdiction over A.S. (Minor), the juvenile court granted A.F. (Mother) sole legal and physical custody of Minor. (Welf & Inst. Code, § 362.4.) Defendant and appellant A.C.S. (Father) contends the juvenile court erred by not granting him joint legal custody of Minor. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

A.     <u>DETENTION</u>

In 2019, Mother had two children. Father was not the father of either of the children. On October 31, 2019, plaintiff and respondent Riverside County Department of Public Social Services (the Department) filed a petition alleging Mother placed her two children at risk of harm due to her abuse of controlled substances and failure to attend to the children's medical needs. On December 12, the juvenile court sustained the petition.

In February 2020, Minor was born; Father is Minor's father. Mother and Father were in a romantic relationship for approximately two years. On July 27, 2020, the Department placed Mother and the two older children on a plan of family maintenance.

In August 2020, Mother and her three children were residing in a homeless shelter. Mother missed curfew at the shelter on August 22 and 23, 2020. The shelter gave Mother a drug test, which was positive for amphetamines. The Department was contacted. Mother confirmed she relapsed and was abusing methamphetamine. Mother said Father "also has a history of methamphetamine [abuse] and reported they have smoked methamphetamine together in the past. [Mother] reported [Father] was released from jail in July 2020 and is currently on parole in San Bernardino County. She stated

2

[Father] was arrested in July 2020 for drug related charges in violation of his parole." Father's arrest concerned possession of a controlled substance and drug paraphernalia.

The Department detained Minor on September 14, 2020. A Department social worker spoke with Father on September 15, and Father confirmed he was on parole. The social worker asked Father to take a drug test, but Father refused.

### B.     JURISDICTION AND DISPOSITION

Father admitted abusing methamphetamine since the age of 15; in October 2020, Father was 34 years old. On October 14, 2020, Father claimed he last abused methamphetamine while incarcerated. Father took a drug test on October 15, which was positive for methamphetamine.

Father waived his rights in regard to the jurisdiction hearing and submitted on the Department's report. The juvenile court found true the allegations that Minor was at substantial risk of suffering serious physical harm because (1) Father "has an unresolved history of abusing controlled substances to include, methamphetamine"; and (2) Father's criminal history includes vehicle theft, being under the influence, possession of a controlled substance, and possession of drug paraphernalia. (Welf. & Inst. Code, § 300, subd. (b)(1).) The juvenile court ordered Minor placed out of Mother's and Father's custody.

### C.     SIX-MONTH REVIEW

Father entered a 90-day inpatient substance abuse treatment program on November 4, 2020. Upon entering the program, Father "tested positive for methamphetamine, amphetamine, and MDMA (Ecstasy)." Mother entered an inpatient

treatment program on December 4.  After 55 days, Father left his program on December 29.  On December 31, Father went to Mother's inpatient residence.  Father "made threats, and appeared to be under the influence due to his speech and eyes.  The facility manager called the police [and] made a police report."

On January 11, 2021, the Department social worker referred Father to an outpatient substance abuse treatment program at Riverside University Health Systems.  Father failed to enroll in the outpatient program.  Father was given a February 2, appointment for an outpatient program through Inland Valley Recovery Services, but Father did not attend the appointment.

On February 24, 2021, the criminal court issued a bench warrant for Father "for an arrest on July 16, 2020, for [taking a vehicle without the owner's consent] and Possess[ion] of Burglary Tools, and for an arrest on August 15, 2019, for Possession of Paraphernalia.  In addition, [Father] ha[d] active vehicle code charges from January 1, 2021, for Two License Plates Displayed, Unlicensed Driver, No Proof of Financial Responsibility, and Impeding Traffic."

Mother and Father ended their romantic relationship, and Mother applied for a restraining order against Father.  In the restraining order application, Mother asserted that, on October 16, 2019, Mother, Father, and Mother's three-year old child, L.B., were in a car.  Mother and Father argued.  Father physically attacked Mother while she was holding L.B. because Father was trying to take keys from Mother.  At one point, Father thought L.B. took the keys, so "he grabbed at L.B. . . . resulting in scratches on [L.B.] On the same day, [Father] took a tank of gasoline, and doused [Mother's] van, and [the

4

two children's] car seats. In August 2019, while [Mother] was pregnant with [Minor], [Father] poured a bottle of urine on her in front of [Mother's other child, H.B.] (age 2)."

The restraining order was granted on March 9, 2021, and it expires on March 9, 2024. The order provides that "[F]ather must not be within 100 yards of [Mother], and must not harass, contact, or take any action directly or through others." Mother "enrolled in a voluntary domestic violence program for victims and she has a domestic violence advocate."

Father took a drug test on March 24, 2021, which was positive for methamphetamine. Father failed to take drug tests on April 2 and 13. On April 30, Father was admitted to Gibson House, an inpatient substance abuse treatment program, and he tested positive for methamphetamine when admitted. While at Gibson House, Father addressed his domestic violence in therapy sessions.

Despite the restraining order, in April and May 2021, Mother and Father spent time together in-person. When the violation of the restraining order was discovered by the Department, Mother was remorseful and said she would cease having contact with Father.

Father completed the Gibson House program on July 14, 2021. Father was in the program for 76 days, but the Department wanted him to stay in the program for 90 days. On July 15, Father went to the Department's office to provide a copy of his certificate of completion for Gibson House. The social worker informed Father that the Department's report had already been filed with the court, but Father could bring the

certificate to court. "[F]ather was agitated and began raising his voice, [and] having rapid speech . . . . [The social worker] suspected [Father] relapsed due to his behavior."

On July 27, 2021, Father was " 'kicked out' " of his sober living home "on an 'irregular discharge.' " The Department social worker directed Father to take a drug test on July 29 and left a bus pass for Father to pick-up so Father could go to the testing facility. Father did not respond and did not pick-up the bus pass. Father missed the July 29 drug test. Another test was scheduled for August 2, but, according to Father, the testing site would not test him because he had used his telephone outside the building; the testing site staff denied that claim. On August 4, Father was at the testing site, but "was behaving very suspiciously when the monitored urine test began, and apparently had something in his pocket that he was trying to get out, and when asked to remove the contents of his pockets, he refused, and the staff asked him to leave," so the test was not completed. On August 6, the Department asked Father to take a saliva drug test prior to visiting Minor; Father canceled the visit.

On October 21, 2021, the juvenile court terminated Father's reunification services and placed Minor in Mother's physical custody on a plan of family maintenance. Part of Mother's case plan was to "develop a domestic violence relapse program."

D. 12-MONTH REVIEW

The Department referred Father for a drug test on October 21, 2021; Father failed to appear for the test. On October 27, Father tested negative for all substances via a saliva test, but "appeared nervous, anxious, and fidgety as if he may [have been] coming

down off controlled substances." On November 17, Father tested positive for methamphetamine via a saliva test. On November 18, Father tested positive for methamphetamine via a urine test. On December 1, Father tested positive for methamphetamine via saliva and urine tests. On December 8, Father failed to appear for a drug test. On December 22, Father tested positive for methamphetamine. On December 29, 2021 and January 28, 2022 Father failed to appear for drug tests. On February 2, 2022, Father "brought a container of fake urine with him and was asked to leave" the testing site.

On February 9, 2022, Father visited with Minor, but Father "appeared to be under the influence as evidenced by having fast speech, irritability, fidgety, and yelling unorganized thoughts." After February 9, Father stopped visiting Minor and refused to submit to drug tests.

On April 7, 2022, the juvenile court held the 12-month review hearing. In regard to custody, Mother's attorney asserted, "This is a DV case, so when it comes to the sole, sole, I think that's the most appropriate exit order." Father's attorney responded, "[U]nderstanding that this is a DV case, [F]ather has no apparent risk to his own child," and therefore, Father should have unsupervised visits with Minor.

The juvenile court granted Mother sole legal and sole physical custody of Minor. The court granted Father supervised visits with Minor a minimum of once per week for two hours. In making its orders, the juvenile court cited Father's positive drug tests and refusal to drug test. The juvenile court terminated the dependency case.

The court explained to Father, "I do believe that you can take steps to address your substance use. [¶] Certainly once this case is concluded, [the] family law court is certainly available for either party or both." The court explained that Father could petition the family court for unsupervised visits and/or joint legal custody when he is able to demonstrate a substantial change in his circumstances.

## DISCUSSION

Father contends the juvenile court erred by denying him joint legal custody of Minor.

" 'Joint legal custody' means that both parents shall share the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (Fam. Code, § 3003.) " 'Sole legal custody' means that one parent shall have the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (Fam. Code, § 3006.) "[I]n making exit orders, the juvenile court must look at the best interests of the child."[1] (*In re John W.* (1996) 41 Cal.App.4th 961, 973.) "[W]hen a court has made a custody determination in a dependency proceeding, ' "a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

---

[1] In family law cases, there is a rebuttable presumption that it is detrimental to the child to award joint legal or physical custody to a person who "has perpetrated domestic violence within the previous five years against the other party seeking custody of the child." (Fam. Code, § 3044, subd. (a).) That presumption does not apply in dependency cases. (*In re C.M.* (2019) 38 Cal.App.5th 101, 109-110.)

When Father is under the influence of methamphetamine he is irritable and shouts at people. For example, (1) on December 31, 2020, Father went to Mother's inpatient residence and "made threats, and appeared to be under the influence due to his speech and eyes"; (2) on July 15, 2021, Father went to the Department's office and "was agitated and began raising his voice," the social worker "suspected [Father] relapsed" due to his rapid speech and behavior; and (3) on February 9, 2022, when a social worker came to Father's relative's home, to pick-up Minor, "[F]ather appeared to be under the influence as evidenced by having fast speech, irritability, fidgety, and yelling unorganized thoughts."

In addition to shouting at people, Father was violent with Mother and L.B. On October 16, 2019, Father physically attacked Mother while she was holding L.B., and he grabbed at L.B., causing scratches, because he thought the child had the keys that Father wanted. That same day, Father poured gasoline on Mother's van and the children's car seats. Additionally, in August 2019, Father poured urine on Mother, while she was pregnant with Minor, and in the presence of H.B. Mother obtained a three-year restraining order against Father.

Father's positive drug tests and refusal to submit to drug tests indicate that Father was actively abusing methamphetamine at the time the juvenile court made the order for sole legal custody. The juvenile court could reasonably conclude that there was a risk of harm to Mother and Minor if Father had joint legal custody of Minor because Father could be under the influence of methamphetamine, begin shouting at Mother over a decision that needed to be made regarding Minor, and ultimately become violent with

Mother and/or Minor, similar to how he was violent with Mother and L.B. Given the risk of harm when Mother and Father interact, it was reasonable to conclude that it was not in Minor's best interest for Father to have joint legal custody of Minor

Father contends that his methamphetamine abuse supports a denial of physical custody, but not a denial of legal custody. Father asserts, "Giving [F]ather joint legal custody did not place [Minor] in any physical danger. . . . Father's drug use did not interfere with his ability to make important life decisions for his son." For the sake of addressing this argument, we will assume that Father will avoid physical contact with Mother, despite the history of violating the restraining order.

When Father is under the influence, he yells disorganized thoughts at people. Father was actively abusing methamphetamine at the time the juvenile court made the exit orders. The juvenile court could reasonably conclude that it would be an extremely difficult, if not impossible, task for Mother and Father to make important life decisions for Minor while Father was actively abusing methamphetamine because Father would not be capable of reasoned communication. If there were an urgent situation that required a decision to be made, and Father were under the influence and shouting disorganized thoughts, then Minor could be harmed. Thus, it was not in Minor's best interests for Father to have joint legal custody. Accordingly, the juvenile court did not abuse its discretion.

Although we have concluded the juvenile court did not err, we will briefly address Father's prejudice argument. Father asserts the juvenile court's alleged error was prejudicial because the legal custody order "effectively terminat[ed] [F]ather's legal

10

custody to [Minor]" "because it will be extremely difficult, if not impossible, for him to change the custody order."

Custody orders issued when the juvenile court terminates jurisdiction over a dependent "shall not be modified" by the family court "unless the [family] court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child."  (Welf. & Inst. Code, § 302, subd. (d).)  The juvenile court's custody order did not effectively terminate Father's legal custody of Minor because Father could potentially regain legal custody of Minor if Father is able to sustain a sober lifestyle and prove that substantial change in the family court.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.


We concur:


CODRINGTON
J.


RAPHAEL
J.


11