Filed 7/31/19

**CERTIFIED FOR PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re C.M., a Person Coming Under the Juvenile Court Law. | B291817 (Los Angeles County Super. Ct. No. DK22753A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. C.E., Defendant and Appellant. | |

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part B of the Discussion.

APPEAL from an order of the Superior Court of Los Angeles County, Martha A. Matthews, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

C.E. (father) appeals an order providing that he and B.D. (mother) share joint legal custody of their son, C.M., issued as part of an order terminating dependency jurisdiction under Welfare and Institutions Code section 362.4.[1]  Father contends it was error to order joint legal custody in light of Family Code section 3044 and sustained petition allegations that mother engaged in acts of domestic violence against her male companion in the presence of her children.  Alternatively, father contends the joint legal custody order was an abuse of discretion.  The Los Angeles County Department of Children and Family Services (Department) contends the joint legal custody order was a valid exercise of the court's discretion.  We conclude Family Code section 3044, and its rebuttable presumption against awarding sole or joint custody of a child to certain perpetrators of domestic violence, does not apply to dependency proceedings under section 300 et seq.  We also

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

find the juvenile court's decision to award joint legal custody was not an abuse of discretion, and so we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has two children, half-siblings C.M. (born June 2012) and N.M. (born August 2014).[2]  Mother had previously participated in voluntary family maintenance in 2016, after N.M.'s father, M.M., was arrested for domestic violence.

The current case started in May 2017, when the Department filed a dependency petition alleging that both minor children were dependents described by section 300. The factual allegations—which were identical for separate counts under section 300, subdivisions (a) and (b)—stated that mother and M.M. had a history of engaging in domestic violence in the children's presence, mother was arrested for domestic violence and child endangerment, and the violent conduct between mother and M.M. placed the children at risk of suffering serious physical harm.  The court ordered the children detained and placed with maternal grandmother, with separate monitored visits for the parents.

In a July 2017 jurisdiction and disposition report, the Department stated mother refused to be interviewed for the report without her attorney.  Mother had started services in

_____

[2] The only parties to the current appeal are father and the Department.  While mother, C.M., N.M., and his father, M.M., were all parties in the dependency proceedings, they are not parties to this appeal.

3

June 2017. Reviewing the history of his relationship with mother and C.M., father told a social worker he had an "on and off" relationship with mother that he ended after she started hitting herself and threatening to call the police during an argument. According to father, mother told him he was the father when she was pregnant with C.M., but after C.M. was born, she asked father to stay away because M.M. had a problem with father, and C.M. believed M.M. was his father. When M.M. was not around, she would allow father to see C.M. Father regretted not seeking custody of C.M. sooner, and he felt sorry for M.M. because mother was also interfering in M.M.'s relationship with N.M. Father was glad the Department was involved so he could now see C.M. Father was concerned about mother telling C.M. he is not C.M.'s father. He did not want to take M.M. from C.M. or confuse C.M., so father would tell C.M. he has two dads.

By August 2017, mother was enrolled and participating in services, and father had completed an online parenting course. The Department liberalized father's visits to unmonitored. The Department raised concerns that mother continued to reside on the same property as maternal grandmother; mother was seeing C.M. every day, and she and maternal grandmother would discuss case issues with him, saying that he would be able to live with mother again soon. Maternal grandmother accused father of hitting C.M., but when the social worker interviewed C.M., he denied being hit by father, and said he enjoyed visits with father and would like visits to be longer.

4

In September 2017, mother completed a parenting program. However, maternal grandmother continued to accuse father and his fiancée of mistreating C.M., and the Department remained concerned that mother and maternal grandmother were coaching C.M. When asked about visits with father, C.M. advised the social worker that mother had told him that M.M. is his father, and that father is just his mother's friend. Father contacted the social worker after maternal grandmother was uncooperative about visitation exchanges.

On September 29, 2017, the court released C.M. to father's custody under the Department's supervision. Maternal grandmother was given monitored visits, and mother's visits—which could no longer be monitored by maternal grandmother—were to take place at the Department's offices.

In November 2017, mother accused father of abusing C.M., posting on social media a photo of C.M. with a bruise on his right cheek. According to the social worker, the bruise occurred when C.M. fell on some rocks on Halloween. On November 9, 2017, the first day of the contested adjudication hearing, the court ordered that "no parties, including family members, are to speak negatively about anything to [C.M.]" or to discuss or post case-related matters on social media.

On December 26, 2017, the second day of the adjudication hearing, father told the Department he was not comfortable with the case being closed, because mother would not follow any of the rules if the Department was no

longer involved.  Father had scheduled an intake session for C.M. to start individual counseling, and he noted that C.M. was more aggressive and bratty after visits with mother. Mother wanted unsupervised visits with the children, and described father's fiancée as overly permissive with C.M. Mother provided the Department with character letters from a pastor, a friend, and a cousin, describing her as family-oriented, nurturing, and loving.  She also provided the boys' Sunday school attendance records from July 2016 through October 2017.

After reviewing the testimony and evidence, the court sustained the petition allegations and ordered mother to participate in a 52-week domestic violence batterer's program, anger management, parenting program, mental health counseling, psychiatric and psychological assessments (psychological evaluations under Evid. Code, § 730), and individual counseling to address case issues and co-parenting.

In early 2018, mother filed a section 388 petition seeking to have C.M. returned to her custody.  The Department filed a response, acknowledging mother's participation in anger management classes and individual counseling.  The domestic violence program mother completed was only a 10-week domestic violence awareness course, not a 52-week domestic violence batterer's course as ordered by the court.  The Department had not yet received mother's psychological evaluation report.  According to the Department's report, Mother stated she was bonded to the

children and that, before detention, C.M. had no contact with father. Mother expressed concern about stability and consistency, noting she took the children to church weekly. The Department expressed concern about whether mother was able to take responsibility for her actions, noting she had not acknowledged fault for the detention of her children, and was quick to blame others. Mother was unable to tell the social worker what she had learned or what had changed since the children were detained. Mother also discussed case issues with C.M. during visits, telling him he would be living with mother and would not see father, reportedly causing C.M. to feel sad and scared. Based on the lack of evidence that mother had resolved the issues leading to the dependency case, along with her failure to complete a 52-week domestic violence batterer's program and her pending psychological evaluation, the Department recommended that the court deny mother's section 388 petition.

On May 30, 2018, the Department provided the court with mother's psychological evaluation, but expressed concern that the parties who were interviewed for the evaluation were not sufficiently trained to opine on mother's mental health. The evaluation itself is not part of the record on appeal. According to the Department, the psychological evaluation recommended mother continue with monitored visitation and continue in counseling, with visits increasing gradually if mother was making good progress. The court denied mother's section 388 petition after a hearing.

Before the six-month status review hearing, the Department reported father had three conjoint counseling sessions with C.M. At a child and family team meeting in March 2018, father said he mostly worried about co-parenting with mother, because she is very controlling and not likely to follow court orders. These tendencies were evidenced by her efforts to talk to the children about their fathers during visits despite being reminded not to do so. Mother would badger C.M. with questions and not stop even after C.M. would make it known he was uncomfortable or tired of answering questions. C.M. told the social worker on multiple occasions that he just wants all this to be over with and for everyone to get along. He loves both mother and father, and doesn't want to "pick" his favorite family.

During mother's monitored visits, she was observed to be attentive to her children, playing with them at all times. She would bring many toys and a variety of foods. During visits, mother would occasionally discuss case issues, but would stop when reminded by the monitor. Mother stated she believes she is an "amazing mother," who doesn't need to change anything because she is the victim in all of this. Mother believed father's fiancée verbally abuses C.M. and causes him emotional distress. Mother stated C.M. doesn't feel safe in father's home, but the Department's report noted that mother's belief was not consistent with C.M.'s statements to the social worker.

Noting that C.M. has been in father's home since September 2017, and there were no current safety concerns,

the Department recommended terminating jurisdiction and entering an order of sole physical custody to father, with monitored visits for mother, and joint legal custody.

At the July 3, 2018 hearing under section 364, the court advised the parties that it planned to terminate jurisdiction with basic visitation and custody orders, but the parties would mediate specifics regarding mother's monitored visitation.  Noting the Department's recommendation for joint legal custody, father raised the presumption under Family Code section 3044,[3] arguing that joint legal custody is presumptively not in a child's best interest when there has been a history of domestic violence. Father requested an order of sole physical and legal custody. Minor's counsel joined in father's request for sole legal custody based on minor's counsel's concerns about the parents' ability to make decisions together.  The court was hesitant to exclude mother from healthcare and educational decisions, given that mother was the parent closely involved in those decisions in the past.  Given mother's past role, combined with the fact that all of the factual details about the domestic violence were in dispute and there were insufficient facts for application of the presumption, the court maintained its joint legal custody order.  The question

---

[3] According to the reporter's transcript, father's attorney referred to Family Code section 34, but based on the context, we construe the reference to mean Family Code section 3044.

9

of legal custody did not arise at the hearing after mediation. Father did note he was not waiving "any appealable issues."

Father filed a notice of appeal on August 2, 2018.

## DISCUSSION

In his timely appeal, father contends the juvenile court erred when it ordered mother and father to share joint legal custody despite the presumption against joint custody set forth in Family Code section 3044. First, he contends the court's failure to apply Family Code section 3044 was error. Second, he contends that even if the presumption did not apply, the joint legal custody order was an abuse of discretion.

### A. The Family Code presumption is inapplicable to dependency proceedings under the Welfare and Institutions Code

Issues involving statutory interpretation and application are subject to a de novo standard of review. (*In re Cheyenne B.* (2012) 203 Cal.App.4th 1361, 1371.) Although both juvenile and family courts have authority to make orders regarding custody and visitation, the two courts operate under separate statutory schemes and serve distinct purposes. (*In re Chantal S.* (1996) 13 Cal.4th 196, 200–201; *In re J.T.* (2014) 228 Cal.App.4th 953, 961.)

10

"[D]ue to the separate and distinct purposes of the juvenile and family courts, many Family Code provisions do not apply in dependency proceedings." (*In re J.T.*, *supra*, 228 Cal.App.4th at p. 961.) No published decision has addressed whether the rebuttable presumption created by Family Code section 3044 applies in a dependency case where the court has sustained an allegation meeting the requirements of Family Code section 3044, subdivisions (a) or (d)(2).[4]

Father has not made any legal argument about why we should depart from the long line of precedent that the Civil

_____

[4] The relevant statutory language at the time of the court's July 2018 hearing stated, "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence against the other party seeking custody of the child or against the child or the child's siblings within the previous five years, there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Section 3011. This presumption may only be rebutted by a preponderance of the evidence." (Former Fam. Code, § 3044, subd. (a), as amended by Stats. 2003, ch. 243, § 1, p. 2329.) "The requirement of a finding by the court shall also be satisfied if a court, whether that court hears or has heard the child custody proceedings or not, has made a finding pursuant to subdivision (a) based on conduct occurring within the previous five years." (Former Fam. Code, § 3044, subd. (d)(2), as amended by Stats. 2003, ch. 243, § 1, p. 2330.) The statutory language was later amended, but the amendments do not have a material impact on our analysis. (Stats. 2018, ch. 941, § 3, pp. 6217–6218.)

11

and Family Codes are not applicable in dependency cases unless expressly stated.  (*In re Chantal S.*, *supra*, 13 Cal.4th at p. 207 [Family Code section 3190 did not apply in a juvenile court proceeding]; *In re J.T.*, *supra*, 228 Cal.App.4th at pp. 961–962 [Family Code section 3104 does not govern visitation in a dependency context]; *In re Alexandria M.* (2007) 156 Cal.App.4th 1088, 1098 [juvenile court had no authority to make orders concerning child support]; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711–712 [presumption that joint legal custody is in a child's best interests did not apply to a juvenile court issuing custody orders upon termination of dependency jurisdiction].)  Instead, father simply argues that the plain language of Family Code section 3044 creates a rebuttable presumption in any case where a court has made a finding that a parent seeking joint physical or legal custody has perpetrated domestic violence "against the other party seeking custody of the child, or against the child or the child's siblings," within the past five years.  (Fam. Code, § 3044, subd. (a).)

"Dependency proceedings are governed by the Welfare and Institutions Code, rather than the Civil Code or the Family Code."  (*In re Alexandria M.*, *supra*, 156 Cal.App.4th at p. 1098.)  When a juvenile court makes custody and visitation orders, it does so pursuant to its authority under the Welfare and Institutions Code, guided by the totality of the circumstances in issuing orders that are in the child's best interests.  (§§ 304, 362.4; *In re Chantal S.*, *supra*, 13 Cal.4th at p. 201 ["The juvenile court has a special

12

responsibility to the child as *parens patriae* and must look to the totality of a child's circumstances when making decisions regarding the child"]; *In re John W.* (1996) 41 Cal.App.4th 961, 973; *In re Roger S.* (1992) 4 Cal.App.4th 25, 30–31.)

Family Code section 3044 is part of an overall scheme set forth in the Family Code to govern various considerations that impact custody decisions under the best interests of the child standard, including whether any protective or restraining orders are in effect, or whether there have been findings that domestic violence has occurred, in which case "special considerations come into play under the Family Code.  (See, e.g., §§ 3011, subds. (a)–(b), 3020, subds. (a), (c), 3044.)"  (*Ellis v. Lyons* (2016) 2 Cal.App.5th 404, 415.) Family Code section 3044 is included in Part 2 ("Right to Custody of Minor Child") in Division 8 ("Custody of Children") of the Family Code.  Part 2 is made expressly applicable to custody disputes only within specified proceedings, including:  proceedings for dissolution or nullity of marriage; proceedings for legal separation; actions by a spouse under Family Code section 3120 for exclusive custody of the children of a marriage; proceedings under the Uniform Parentage Act; actions by the district attorney for enforcement of support; and proceedings brought under the Domestic Violence Prevention Act.  (Fam. Code, § 3021.) Part 2 is not applicable to custody decisions made in

13

dependency proceedings under the Welfare and Institutions Code.[5]  (*Id.*)

The court in *In re Jennifer R., supra,* 14 Cal.App.4th 704, explained why the juvenile court is not bound to follow Family Code provisions regarding custody determinations. "Although both the family court and the juvenile court focus on the best interests of the child significant differences exist. In juvenile dependency proceedings the child is involved in the court proceedings because he or she has been abused or neglected.  Custody orders are not made until the child has been declared a dependent of the court and in many cases, . . . the child has been removed from the parents upon clear and convincing evidence of danger.  The issue of the parents' ability to protect and care for the child is the central issue. The presumption of parental fitness that underlies custody

---

[5] The inapplicability of Family Code section 3044 to dependency proceedings is also made clear by provisions relating to issuance of domestic violence restraining orders under the Welfare and Institutions Code.  When a juvenile court issues a restraining order pursuant to section 213.5, and then makes an order for custody pursuant to that section, the juvenile court is required to "follow the procedures specified in subdivisions (c) and (d) of Section 6323 of the Family Code," relating to ensuring safety in making orders relating to the time, place, and manner of visitation with children.  (§ 213.5, subd. (k).)  Notably, section 213.5 does not require the juvenile court to follow any other provisions of the Family Code—including Family Code section 3044—in making custody orders relating to domestic violence restraining orders.

law in the family court just does not apply to dependency cases. Rather the juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child *without any preferences or presumptions*." (*In re Jennifer R.*, at p. 712, italics added.) We see no basis to depart from the sound reasoning of the cases that conclude Family Code provisions are inapplicable in dependency cases unless expressly stated.

### B. The joint legal custody order was not an abuse of discretion

Even without the presumption under Family Code section 3044, father contends the court erred in ordering joint legal custody. We review a juvenile court's custody determination in a dependency proceeding for abuse of discretion. We will not disturb the juvenile court's determination unless it is arbitrary, capricious, or patently absurd. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.)

While father makes reasonable and valid arguments about why sole legal custody should have been granted, he has not established that it was an abuse of discretion to award joint legal custody. Father emphasizes the challenges of consulting with mother on educational and medical decisions. He argues mother and maternal grandmother

15

made repeated efforts to deny or minimize his status as C.M.'s father. In addition, after mother and maternal grandmother accused father of physically abusing C.M. during visits, the Department found the claims were unsubstantiated, and even C.M. himself denied any abuse, despite attempts to coach him to say otherwise. We do not turn a blind eye to the significant evidence that mother at times actively undermined father's efforts to build a relationship with C.M. However, there is also evidence in the record to support the court's determination that on balance, it was in C.M.'s best interest for his mother to have joint legal custody. Mother was C.M.'s primary caretaker from birth until May 2017, when he was almost five years old. In addition, there was evidence that mother and C.M. shared a close bond, and that C.M. did not want to have to choose between mother and father. Mother maintained a close connection with both children after detention, seeing them every day when they were placed with maternal grandmother. Even when mother's contact was restricted to monitored visits, she was observed to be engaged with her children during visits, and she considered herself responsible for their spiritual education.

Father argues that if mother causes difficulties in the future, he may not be able to demonstrate the changed circumstances necessary to obtain a modification of the custody order. He asks this court to reverse the joint legal custody order now to avoid such difficulties. That, however, is not the test. Father has not demonstrated that the court's

16

decision was contrary to C.M.'s best interests, or that it constituted an abuse of discretion.

## DISPOSITION

The court's order for C.E. and B.D. to share joint legal custody of their son, C.M., is affirmed.


MOOR, J.

We concur:



BAKER, Acting P. J.



KIM, J.