Filed 10/20/20  In re Z.L. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Z.L. et al., Persons Coming Under the Juvenile Court Law. | B303784 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. Nos. 18CCJP07385A, 18CCJP07385B) |
| Plaintiff and Respondent, | |
| v. | |
| NATHAN L., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Jana M. Seng, Judge.  Affirmed.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Nathan L. (father) challenges the juvenile court's orders terminating jurisdiction and granting mother sole custody of their children, Z.L. and E.L.  For the reasons stated below, we affirm.

## BACKGROUND

Mother and father have two children together, two-year-old Z.L. and one-month-old E.L.  The family came to the attention of the Department of Children and Family Services (DCFS) after a domestic violence incident in November 2018.  At the time, the parents had known each other for 16 years, but had only lived together for the last five months.

On the day of the incident, father could not sleep because E.L. had been crying due to colic.  Father became angry and accused mother of being a bad parent because she could not control E.L.'s crying.  Mother explained that E.L. was crying from colic, which was a normal condition for infants and father should research the condition before blaming mother.  Father then cursed and pushed mother saying, "take your ass in the room." While mother had E.L. in her arms, father struck mother in the face.  Z.L., who was also awake, cried and ran from the room. Father then tried to comfort Z.L. while mother put E.L. in his crib.  When mother checked on Z.L., father pushed mother, causing her to hurt her ankle.  Although mother did not call the police, she threatened to do so and father left the home.  That weekend, mother stayed with her sister.

2

A week later, mother and father were back in the home together. Z.L. had a diaper rash and father accused mother of being neglectful. Father tried to take a photo of Z.L.'s diaper area, but mother told him not to and tried to stop him. In the past, father had taken photos and videos to accuse mother of negligence. Mother pushed father's arm to prevent him from taking the photo and then locked herself, E.L., and Z.L. in the bathroom before calling the police.

DCFS filed a Welfare and Institutions Code[1] section 300 petition, alleging that parents had a history of engaging in violent physical altercations in the presence of the children and that such violent conduct endangered the children's physical health and safety. The petition detailed the domestic violence incident where father pushed mother and struck her in the face multiple times while she was holding E.L.

By the November 2018 detention hearing, mother had moved in with the children's maternal aunt. The juvenile court made prima facie findings, detaining the children from their father and releasing them to the home of mother. The juvenile court ordered monitored visitation for father, allowing two to three visits per week for two to three hours each with DCFS acting as monitor. The juvenile court also granted mother's request for a temporary restraining order against father and prohibited mother from monitoring father's visitation.

DCFS interviewed mother for the jurisdiction report. Mother stated that father had been verbally and mentally abusive and that he would often demean her when E.L. would cry and mother tried to comfort the child. Mother stated that father

---

[1] All further statutory references are to the Welfare and Institutions Code.

became upset when the children would cry, but instead of helping her, father would get upset and leave. While mother did not wish to reconcile her romantic relationship with father, she wanted to coparent with him.

DCFS contacted father, who was uncooperative. He refused to work with female social workers, believing they were biased against him. Father stated that the allegations of domestic violence were false and that the entire case was tainted because everyone involved had been a woman and "women are going to protect women." Father initially refused to participate in the court-ordered monitored visitation and refused to meet with DCFS for further interview.

The trial court directed DCFS to set up a holiday visit for father and dissolved the temporary restraining order. On Christmas Eve, mother and the children visited father and spent the night. Mother thought that she had to stay with the children during the holiday visit and did not know that she was prohibited from monitoring father's visits. Thereafter, mother stated she would comply with the court order not to monitor father's visits.

Father's first DCFS-monitored visit was in April 2019 for 45 minutes, during which father gave E.L. a walker and gave Z.L. a tricycle. During the visit, father was appropriate with the children and there were no safety concerns. Father refused further monitored visits and declined referrals for services, wishing to leave everything as is and to wait until the adjudication hearing.

At adjudication, the juvenile court sustained the petition and removed custody of the children from father and placed them with mother. The allegations against mother were stricken. The juvenile court ordered father to complete a 26-week domestic

violence course and parenting classes and granted him unmonitored visits three times per week for three hours each.

Father did not comply with the court-ordered domestic violence counseling or parenting classes. After receiving a packet of referrals from DCFS, father stated, "I am not a batterer and refuse to take a course listed as such. When the court changes the course, I will take it." DCFS told father that it could assist father in getting joint custody of the children, assuming he complied with the juvenile court's orders. However, if father failed to start his domestic violence counseling and parenting classes, DCFS would recommend that mother get full custody. Father stated, "I have . . . better things to be doing with my time and energy than being forced to take those classes."

Mother reported that father had 11 unmonitored visits between May 30, 2019 and June 29, 2019 that were without incident. She felt comfortable exchanging the children at father's home. However, starting in August 2019, father began sending harassing text messages to mother and the social workers, threatening to report her to the police for domestic violence and accusing DCFS of discriminating against him. Mother stopped responding to father's calls and text messages and reported the messages to DCFS, requesting the agency facilitate further exchanges for father's visitation. Mother and father arranged further visits after mother started attending her domestic violence group. Mother reported that, since father's last series of harassing text messages, they had been coparenting well together and that father had seen the children every Tuesday and Saturday from September 3, 2019 through October 1, 2019.

In October 2019, father contacted DCFS and said he was concerned about the children's safety because mother's current

living arrangement required the children to share a bathroom with an adjacent apartment. DCFS assessed mother's living arrangement and found no issues. Father again accused DCFS of discrimination and threatened to file a multimillion dollar lawsuit against the agency, saying this was another example of "women helping and supporting women." Around this time, mother tried to arrange a different visitation schedule with father because her domestic violence classes were no longer on Saturdays. Father responded that coparenting "was inconveniencing him" and told mother that he would "see [her] in court." Mother proposed to father that the exchanges should take place either at a public location or at DCFS's office. Father then sent another series of harassing text messages to mother, threatening to report her for battery and calling her an evil demon. Regarding the exchanges, father stated, "You will bring them here or I won't see them until court when I take them from you and send you to jail. You can choose." Father had one further visit with the children in November 2019, after which, father sent more harassing text messages, threatening to take the children from mother and to send her to jail for battery.

DCFS was never able to assess father's home as he would not allow social workers inside, even after DCFS complied with father's request to assign a male social worker.

At the section 364 hearing, the father addressed the juvenile court. He accused mother of domestic violence and insisted that he was the victim and she was the abuser. He then stated that he was being discriminated against by the Los Angeles Police Department and DCFS. DCFS recommended awarding mother sole custody of the children and unmonitored visitation for father. The juvenile court adopted DCFS's

recommendation, finding that while father loved his children, he made no progress in complying with the juvenile court's orders to complete the domestic violence program or parenting classes. Meanwhile, mother had been making good strides in her programs and services. The juvenile court advised father that he could seek a joint custody order in the family court if he completed those programs that were part of his case plan.

## DISCUSSION

When the juvenile court makes custody and visitation orders, it has a special responsibility to the child as *parens patriae* and must look at the totality of the child's circumstances. (*In re C.M.* (2019) 38 Cal.App.5th 101, 109.) We review a juvenile court's decision to terminate jurisdiction and to issue an accompanying exit custody order for abuse of discretion and will not disturb the ruling unless the court made an arbitrary, capricious or patently absurd determination. (*In re C.W.* (2019) 33 Cal.App.5th 835, 863.) The juvenile court's broad discretion to determine what best serves a child's interests will not be reversed absent a clear abuse of discretion. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)

The juvenile court properly fashioned its custody orders on the totality of the circumstances of this case; and father has not demonstrated an abuse of discretion. Rather, father relies on the juvenile court's recognition that he loved his children and that his visits were without incident. However, father fails to acknowledge that his successful visits occurred when the children were under the juvenile court's jurisdiction and DCFS was regularly checking in with both parents to ensure that the children were safe. At the same time, father refused to cooperate with DCFS and indicated he had better things to do than

7

complete his domestic violence counseling and parenting classes. He denied his role in the domestic violence incident, which showed a complete lack of concern for the children's safety as he struck mother in the face while she held E.L. in her arms and while Z.L. was in the room. Even after DCFS told father that it would recommend granting sole custody of the children to mother if father did not make any progress towards completing domestic violence counseling, father denied any culpability and insisted that mother was the abuser and he was the victim. Meanwhile, mother learned to set appropriate boundaries with father and made good strides in her programs and services, including completing a domestic violence program that gave her the tools to recognize father's pattern of abuse. Moreover, the record shows that father continued to threaten and harass mother even as she attempted to comply with the juvenile court's visitation orders and facilitate father's visits. Based on father's behavior, the juvenile court was within its discretion to award mother sole custody while granting him unmonitored visitation.

Lastly, father's parental rights were not terminated, and he can still seek a modification or termination of the custody order in family court once he completes his domestic violence program and parenting classes. (See *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 714.) Accordingly, we find no abuse of discretion.

## DISPOSITION

The orders are affirmed.
NOT TO BE PUBLISHED.


DHANIDINA, J.


We concur:



EDMON, P. J.



LAVIN, J.