Filed 3/25/24  In re Ernest R. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Ernest R. et al., Persons Coming Under the Juvenile Court Law. | B323956 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. P.R., Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP04280D–E) |

APPEAL from an order of the Superior Court of Los Angeles County.  Jean M. Nelson, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

P.R. (Father) appeals from the juvenile court's order at a 12-month review hearing, terminating dependency jurisdiction over his two minor children, granting joint legal custody to the parents and sole physical custody to the mother, S.R. (Mother), and ordering unmonitored visits for Father. On appeal, Father argues the juvenile court erred by granting sole physical custody to Mother without considering the children's best interests, and by conditioning modification of its order on Father's participation in an Alcoholics Anonymous (AA) program with a sponsor. We conclude that the juvenile court properly considered the children's best interests in issuing its custody order, and that it did not place any conditions on the family court's modification of such order in the future. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Dependency petition

Mother and Father are the parents of two minor children: Ernest R., born in February 2009, and Matthew R., born in May 2014. The parents also have three adult children. In 2018, both Ernest and Matthew were declared dependents of the juvenile court based on Father's substance abuse and domestic violence against Mother. The following year, in June 2019, the court terminated jurisdiction over the children and released them to the parents.

The current matter came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in May 2021 based on a referral alleging an incident of domestic violence between the parents while the children were present in the home. In an interview with DCFS, Mother stated that Father punched her in the face with a closed fist, causing an

injury to her lip. She also disclosed that Father had been drinking heavily for the past six months, and he appeared to be drunk when he hit her. In his interview with DCFS, Father denied punching Mother. He described the altercation as a "scuffle" during which his elbow might have "accidentally" hit Mother's lip. While Father admitted he drank alcohol on the day of the incident, he denied he was intoxicated.

Both Ernest and Matthew confirmed they were present in the home during the altercation, but they did not witness it. The children also indicated that Father frequently drank alcohol, including on the day of the incident, and that he became aggressive with Mother when he was drunk. The children's older brother, A.R., reported that the parents had a history of domestic violence in which Father was physically and verbally abusive toward Mother.

On June 21, 2021, DCFS filed a dependency petition for the children under Welfare and Institutions Code[1] section 300, subdivisions (a), (b), and (j). The petition alleged the children were at substantial risk of harm based on the parents' domestic violence and Father's substance abuse.

At the June 24, 2021 detention hearing, both parents appeared and were appointed counsel. The juvenile court detained the children from Father and released them to Mother pending an adjudication hearing.

## II. Jurisdictional and dispositional hearing

For its August 10, 2021 jurisdictional and dispositional report, DCFS interviewed the family about the allegations in the

---

[1] Unless otherwise stated, all further undesignated statutory references are to the Welfare and Institutions Code.

section 300 petition.  As to the domestic violence allegation, Mother recounted that Father became angry when she refused to give him attention.  After Mother pushed him away, Father called her a "bitch," and then punched her in the mouth with a closed fist.  While the children did not witness the altercation, Ernest heard Mother screaming and saw that her lip was bleeding.  Father continued to deny hitting Mother, and claimed she injured her lip when they fell onto the couch while struggling over his cell phone.  He also stated that Mother "provoked" him.

As to substance abuse allegations, Mother reported that Father recently began drinking daily, and that his alcohol use caused him to be physically aggressive toward her.  Mother never left the children alone with Father when he was drinking.  Both Ernest and Matthew confirmed that Father often drank beer.  When asked about the frequency, Ernest responded "kind of every day," and Matthew replied "a lot."  Ernest also stated that Father "acts different, more aggressive than usual" when he drinks.  Father denied he had a substance abuse problem. He claimed that he drank beer about twice a week, and that on the day of the altercation with Mother, he "had like two beers" but "wasn't drunk."

DCFS reported that Father had an extensive criminal record that included multiple arrests for domestic violence. Following the latest domestic violence incident, Father was convicted of corporal injury on a spouse (Pen. Code, § 273.5) and placed on probation.  The criminal court issued a three-year protective order against Father prohibiting contact with Mother, and ordered him to attend 26 AA sessions and a 52-week domestic violence program.  The criminal court later modified the protective order to allow peaceful contact between the parents.

On August 26, 2021, the juvenile court held a jurisdictional and dispositional hearing. The court sustained the petition under section 300, subdivisions (b) and (j), based on the parents' domestic violence and Father's alcohol abuse. The court declared both Ernest and Matthew dependents of the court, removed the children from Father, and released them to Mother under DCFS's supervision. The court ordered family maintenance services for Mother, including an Al-Anon program, family preservation services, individual counseling to address case issues, and conjoint counseling with Father if they reconciled. The court ordered enhancement services for Father, consisting of random weekly drug and alcohol testing, a 12-step program with a court card and sponsor, a 52-week domestic violence program, individual counseling to address case issues, and conjoint counseling with Mother if they reconciled. The court also ordered monitored visitation for Father a minimum of three times per week.

## III. Six-month review hearing

As of February 2022, Mother was participating in weekly Al-Anon meetings, individual counseling, conjoint counseling with the children, and family preservation services. The therapist who provided conjoint counseling to Mother and the children noted that the children appeared to be happy in Mother's care, and that Mother was attentive to their needs and involved in their daily activities. The therapist did not have any concerns about the children's safety in Mother's care. The outreach counselor who provided family preservation services likewise reported that she had no safety concerns about the children, and that both Ernest and Matthew appeared to have a close relationship with Mother.

Father had made some progress with his case plan. He was testing negative for drugs or alcohol. He was participating in a 52-week domestic violence program and had completed 25 sessions. However, he had not enrolled in individual counseling despite receiving multiple referrals from the social worker. Although Father stated that he previously attended in-person AA meetings for his criminal case, he did not have a sponsor or a court card to verify his attendance. He also reported that he recently began attending an online 12-step program, but did not provide any details. Father told the social worker, "I'm not stressing over the Court's orders. I do what I can."

During Father's visits with the children, both Ernest and Matthew appeared comfortable with Father, and there were no reported concerns about their safety. The children expressed that they missed Father, enjoyed spending time with him, and wanted the visits to continue.

On February 24, 2022, the juvenile court held the six-month review hearing. The court found that continued jurisdiction was necessary, and ordered an additional three months of services for the parents.

## IV.   Nine-month review hearing

As of May 2022, Ernest and Matthew remained suitably placed in Mother's home. The children successfully completed individual and family counseling, and they reported that they had a positive relationship with Mother. The children also continued to have monitored visits with Father as his work schedule permitted.

Mother was complying with her case plan. She completed individual counseling and conjoint counseling with the children, and she continued to participate in weekly Al-Anon meetings and

6

family preservation services. Mother disclosed that she had begun spending time with Father outside of the children's presence, and that she wanted to reconcile with him once he completed his programs. In April 2022, Mother participated in a child and family team (CFT) meeting in which she agreed that the children needed a safe home free from any domestic violence or alcohol use.

Father continued to test negative for drugs and alcohol, and to participate in a domestic violence program. He also began individual counseling. While Father told DCFS that he was attending online Al-Anon meetings, the only proof that he provided were personal notes that he took on his cell phone. He denied he was participating in AA meetings or had a sponsor. Father also reported that he wished to reconcile with Mother, and was interested in conjoint counseling with her. Father's therapist, however, recommended that he not begin conjoint counseling with Mother until he completed his domestic violence program. Although DCFS repeatedly offered Father the opportunity to participate in a CFT meeting, he declined each time, stating, "I don't have time and I will not do anything extra that is not court ordered."

In its May 2022 status review report, DCFS noted that Father continued to blame others for the agency's involvement with the family, and that he appeared to struggle with managing his anger when the social worker attempted to discuss services with him. DCFS also noted that Father continued to state that he did not physically abuse the children, and that he had not gained insight into how his domestic violence or alcohol use negatively affected them. DCFS recommended the court continue its jurisdiction so that Father could complete his court-ordered

programs and the parents could participate in conjoint counseling given their plans to reconcile.

At a review hearing held on May 26, 2022, the juvenile court ordered an additional three months of services for the parents, including referrals for conjoint counseling. The court ordered DCFS to assess Father for limited unmonitored visits, and granted DCFS the discretion to liberalize the visits. The court stated to Father, "[Y]ou are making progress, but I need you to complete the programs. And it is not just so we can check the box. I need you to show a real change in how you view why this case came here."

## V.     12-month review hearing

As of September 2022, the children continued to do well in Mother's care. Mother was complying with her case plan, and she and the children had successfully completed their family preservation services. Mother also participated in another CFT meeting in which she reiterated that she would not allow Father to return to the family's home until he fully addressed his case issues.

During this review period, Father completed the domestic violence program and individual counseling. The facilitator for the domestic violence program described Father's participation as "Excellent." Father's therapist reported that he was "invested in his therapy and demonstrated healthier problem-solving skills." However, Father was still not participating in AA meetings, had stopped attending Al-Anon meetings, and never obtained an AA or Al-Anon sponsor. Father told DCFS that he was busy with work, and that it was difficult to find a sponsor when the meetings were online. While Father continued to test negative

8

for drugs and alcohol, he missed an on-demand test in July 2022 and again in August 2022.

Mother and Father began participating in weekly conjoint counseling in July 2022. However, Father failed to attend one of the scheduled sessions in August 2022. The therapist noted Mother was emotional during that session and asked how she could stop conjoint counseling. Both parents later told DCFS that they wanted to continue with the counseling to learn better communication. The therapist reported that Mother and Father had been "open and cooperative" during the sessions, but they "struggled markedly with maintaining effective communication with one another to effectively resolve conflicts and co-parent." The therapist recommended the parents remain in conjoint counseling for at least two months to address these issues.

During the review period, Father continued to have regular visitation with the children. Two paternal aunts who served as the monitors reported that Father was appropriate and attentive during the visits, and that he calmly redirected the children when needed. During one visit, the social worker also observed that Father was patient with the children, and that the children appeared comfortable with Father and enjoyed engaging with him. The children noted that Father was visiting them more frequently, and they wanted the visits to continue. In early August 2022, DCFS liberalized Father's visits to unmonitored.

On September 1, 2022, the juvenile court held the 12-month review hearing. Counsel for DCFS and counsel for the children joined in requesting that the court terminate its jurisdiction with a custody order granting joint legal custody to the parents, sole physical custody to Mother, and unmonitored visitation to Father. The children's counsel noted that Father

9

had not attended AA meetings or obtained a sponsor, and that the parents were still working on their issues in conjoint counseling. Counsel also noted that, while the children recently began having unmonitored visits with Father, they had remained in Mother's care throughout the case and were comfortable with her.

Father's counsel asked the court to grant the parents joint legal and physical custody. His counsel argued that Father consistently tested negative for drugs and alcohol, and completed a domestic violence program and individual counseling where he addressed case issues, including alcohol use. His counsel asserted that Father had not attended AA meetings or obtained a sponsor due to his work schedule.

The juvenile court stated that it shared the concerns of the children's counsel about Father's alcohol use. The court explained: "Father had been in denial that alcohol was the problem and that he is an alcoholic. He has obtained treatment, but what the AA offers is more time for somebody to face the fact that they are an alcoholic, and to meet other alcoholics and gain support and to also work with a sponsor. Father says it has been difficult because of his job and things being online, but plenty of other families have been able to access these services during the pandemic and while holding jobs. I'm concerned there will be a relapse if he doesn't seek support."

The court ordered the termination of jurisdiction over the children pending the receipt of a custody order that granted joint legal custody to the parents, sole physical custody to Mother, and unmonitored visitation to Father. At the hearing, the court also stated that "[c]ustody to indicate that Father needs to complete a period with consistent participation in AA and use of a sponsor."

On September 8, 2022, the court signed the custody order and terminated its jurisdiction over Ernest and Matthew. The written custody order provided that "Father is to have unmonitored visits as arranged by the parents as he has not completed Alcoholics Anonymous nor obtained a sponsor." Father filed a timely appeal.

## DISCUSSION

Father challenges the portion of the juvenile court's order that granted sole physical custody of the children to Mother and unmonitored visitation to Father. He contends the court erred in awarding Mother sole physical custody without considering the children's best interests. He also claims the court overstepped its authority to the extent it conditioned modification of its order on Father's participation in AA and use of a sponsor. We conclude the juvenile court did not abuse its discretion in issuing the custody order.

### I.     Governing law

Once a child has been adjudged a dependent of the juvenile court under section 300, "any issues regarding custodial rights between his or her parents shall be determined solely by the juvenile court . . . so long as the child remains a dependent of the juvenile court." (§ 302, subd. (c).) Section 364 requires the court to conduct a review hearing every six months for a dependent child who remains in the physical custody of his or her parent. (*Id*., subd. (a); see *In re T.S.* (2020) 52 Cal.App.5th 503, 512.) At the section 364 review hearing, the court "shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of

11

jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c).)

When terminating jurisdiction over a dependent child, section 362.4 authorizes the juvenile court to issue "an order determining the custody of, or visitation with, the child." (*Id.*, subd. (a).) Section 362.4 further provides that the order "shall continue until modified or terminated by a subsequent order of the superior court," and directs that the order be filed in a pending family court proceeding (*id.*, subd. (b)) or, if there is none, as part of a new family court file (*id.*, subd. (c)). When the juvenile court issues a custody or visitation order under section 362.4, "[t]he order shall not be modified" in a family court proceeding "unless the court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child." (§ 302, subd. (d).)

In making a custody or visitation order under section 362.4 (commonly referred to as an "exit order"), the court's " 'focus and primary consideration must always be the best interests of the child.' " (*In re T.S., supra*, 52 Cal.App.5th at p. 513.) A juvenile court is not restrained by any preferences or presumptions that are ordinarily applicable in family court. (*In re C.M.* (2019) 38 Cal.App.5th 101, 110; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.) We review a juvenile court's exit order for abuse of discretion. (*In re M.R.* (2017) 7 Cal.App.5th 886, 902.) We " 'may not disturb the order unless the court " ' "exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " ' " (*Ibid.*)

12

## II. The juvenile court did not abuse its discretion in issuing the custody order

Viewing the evidence in the light most favorable to its ruling, the juvenile court did not abuse its discretion in issuing an exit order that granted sole physical custody of the children to Mother and unmonitored visitation to Father. This case was the second time that the court assumed jurisdiction over the children based on Father's domestic violence and alcohol abuse. Less than two years after the court terminated its jurisdiction and returned the children to both parents, Father committed another act of domestic violence against Mother while under the influence of alcohol. Although Father denied that he had a substance abuse problem, Mother and the children confirmed that he drank alcohol on a daily basis and became physically aggressive when he was drunk. Accordingly, when the court again exercised jurisdiction over the children in August 2021, it ordered Father to participate in enhancement services, including random drug and alcohol testing, a 12-step program with a court card and sponsor, a domestic violence program, individual counseling, and conjoint counseling with Mother if they intended to reconcile.

By the time the juvenile court terminated its jurisdiction and issued the custody order in September 2022, Father was in partial compliance with his case plan. He completed individual counseling and a domestic violence program, and was participating in conjoint counseling with Mother. He continued to test negative for drugs and alcohol, though he failed to appear for two on-demand tests between July and August 2022. While Father reported that he previously attended AA meetings as part of his criminal case, he declined to participate in AA for the dependency case. In May 2022, he told DCFS that he was

13

attending Al-Anon meetings online, but he did not provide a court card to verify his attendance. He also failed to obtain a sponsor, and by September 2022, he stopped participating in Al-Anon because he claimed he was too busy with work.

During this same period, Mother fully complied with her court-ordered services. In addition to attending weekly Al-Anon meetings, Mother successfully completed individual counseling, conjoint counseling with the children, and family preservation services. She also participated in CFT meetings where she expressed her commitment to providing the children with a safe and healthy home environment. The record further reflects that the children were consistently well-cared for by Mother and closely bonded to her. The service providers who worked with Mother and the children noted that they had a strong bond, that Mother was attentive to their needs, and that the children appeared to be happy in her care. The children likewise reported that they had a positive relationship with Mother.

The record does show that the children were bonded with Father. Both Ernest and Matthew expressed to DCFS that they missed Father, and that they enjoyed spending time with him during their visits. However, as their counsel noted at the September 2022 hearing, the children only recently began having unmonitored visits with Father, whereas they had been in Mother's custody throughout the proceedings and were doing well in her care. Additionally, Father's failure to participate in AA meetings or obtain an AA sponsor supported the inference that he had not gained sufficient insight into how his alcohol use affected his children. Considering the totality of this record, the juvenile court reasonably could conclude that the children's

interests were best served by granting sole physical custody to Mother and unmonitored visitation to Father.

Citing *In re N.M.* (2023) 88 Cal.App.5th 1090 (*N.M.*), Father argues the juvenile court erroneously based its exit order on his failure to comply with his case plan rather than on the children's best interests. This argument lacks merit. In *N.M.*, the juvenile court sustained a dependency petition due to the mother's alcohol abuse, and ordered services for both parents. (*Id.* at pp. 1092–1093.) When the court later terminated its jurisdiction, it denied the father's request for joint physical custody, stating that " '[i]t's not appropriate to reward a parent who does nothing in this court.' " (*Id.* at p. 1093.) In reversing the order granting the mother sole physical custody, the Court of Appeal explained that "an exit order must serve the best interests of the children, not reward or punish one parent or another for failing to comply with the case plan." (*Id.* at p. 1095.) The court also noted that the father had "never been deemed an offending parent," and there was no evidence that his lack of compliance with his case plan "impacted the children in any way." (*Ibid.*)

In this case, however, Father was the offending parent based on his alcohol abuse and domestic violence against Mother. Moreover, the juvenile court never suggested that it was granting sole physical custody to Mother to avoid rewarding Father for his failure to comply with his case plan. Rather, the court stated it was concerned that Father was still in denial about his alcohol abuse, and that he was at risk of relapsing if he did not seek support through AA and a sponsor. Given the evidence, the court did not err when it considered Father's unresolved issues with alcohol in deciding custody and visitation.

Citing *In re Cole Y.* (2015) 233 Cal.App.4th 1444 (*Cole Y.*), Father also asserts the juvenile court improperly conditioned the family court's modification of the exit order on his participation in AA and use of a sponsor. We disagree. In *Cole Y.*, the juvenile court issued an exit order that granted joint legal custody to the parents and sole physical custody to the mother. (*Id.* at p. 1451.) The court stated that " 'in order to modify the court's orders, . . . Father will have to complete . . . a full drug program with weekly testing, a parenting program and individual counseling.' " (*Ibid.*) The Court of Appeal held that, under section 302, subdivision (d), the juvenile court did not have the authority to condition the family court's modification of an exit order upon a parent's completion of certain programs. (*Id.* at p. 1456.)

Here, the juvenile court orally stated that "[c]ustody to indicate that Father needs to complete a period with consistent participation in AA and use of a sponsor." Then, in its written custody order, the court specified that "Father is to have unmonitored visits as arranged by the parents as he has not completed Alcoholics Anonymous nor obtained a sponsor." In contrast to *Cole Y.*, the court in this case did not place any express conditions on the family court's authority to modify the exit order. The written order makes clear that, in referencing Father's failure to participate in AA or obtain a sponsor, the court was not imposing any such conditions, but rather was explaining the basis for its decision on custody and visitation. The written order, which will be placed in a family court file, does not purport to limit the family court's power to modify custody or visitation in the future if warranted by the circumstances. On this record, the juvenile court's custody order was not an abuse of discretion.

## DISPOSITION

The juvenile court's custody order is affirmed.

VIRAMONTES, J.

WE CONCUR:

GRIMES, Acting P. J.

WILEY, J.

17