Filed 5/20/26  In re K.V. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re K.V., a Person Coming Under the Juvenile Court Law. | B346718 (Los Angeles County Super. Ct. No. 24CCJP02807A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. C.V., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dash Talbot, Judge Pro Tempore.  Affirmed.

Benjamin Ekenes, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

## I.  INTRODUCTION

On appeal from an order terminating dependency jurisdiction over the child K.V., born in 2020 (child), C.V. (father) challenges the juvenile court's order awarding sole legal custody of the child to C.C. (mother).  Father contends there was insufficient evidence to support the custody order.  We affirm.

## II.  BACKGROUND

A.  *Dependency Petition*

On September 4, 2024, the Los Angeles County Department of Children and Family Services (Department) filed a Welfare and Institutions Code[1] section 300 petition on behalf of the child.  It alleged, as sustained by the court:

"a-1 [and b-1]

"The child['s] mother … and father … have a history of engaging in violent altercations in the presence of the child.  On 07/19/2024, the father placed the father's hand on the mother's neck, strangled the mother and pinned the mother against a bed while the child … was present.  The father pushed and struck the

---

[1]  Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

mother's chest with a closed fist, took the mother's glasses and threw them away. The father grabbed the mother's shirt collar from behind and forcefully pulled the mother, causing the mother loose [*sic*] balance. The mother sustained a laceration on the mother's back. The mother repeatedly struck the father's head and body with the mother's hands. The mother struck the father's head with a Nintendo Switch. On a prior occasion, the father pulled the mother's hair. On prior occasions, the father and the mother mutually struck each other. On 07/19/2024, the father was arrested for [Penal Code, section] 273.5(a) Felony-Domestic Violence. Such violent conduct on the part of the father and the mother, endangers the child's physical health and safety, creates a detrimental home environment and places the child at risk of serious physical harm, damage, and danger.

"b-2

"The child['s] father … has a history of substance abuse including methamphetamine and amphetamine and is a current abuser of methamphetamine and marijuana, which renders the father incapable of providing regular care and supervision of the child. Further, the father is a Registered Controlled Substance Offender. The child … is of such a young age as to require constant care and supervision and the father's substance abuse interferes with providing regular care and supervision of the child. The child's mother … knew or reasonably should have known of the father's substance abuse and failed to protect the child by allowing the father [to] reside in the child's home and to have unlimited access to the child. The child's paternal sibling, [B.V.], was a prior dependent of the Juvenile Court, due to the father's substance abuse. Such substance abuse by the father, and the mother's failure to protect the child, endangers the

3

child's physical health and safety, creates a detrimental home environment and places the child at risk of serious physical harm, damage and failure to protect."

B.    *Adjudication/Disposition Report*

On October 18, 2024, the Department filed its jurisdiction and disposition report.  On October 8, 2024, mother reported to the social worker that father had begun abusing her three years ago.  A year earlier, father pulled mother's hair and punched her, giving her a black eye and a "busted" lip.  During another incident the prior year, father hit mother as the two were inside a car that he was driving.  When mother tried to open the door to exit the car, father grabbed her by the hair.  Mother then hit father so that he would let her go.  Father had previously kept mother from meeting with maternal grandmother so that grandmother would not see mother's bruising.

On July 19, 2024, father wanted mother to make breakfast, but she told him to make his own breakfast.  Father became angry and shoved mother in the shoulder.  Father raised his voice, causing the child to wake up and ask why they were fighting.  Father removed mother's eyeglasses and when mother attempted to get away from him, father pulled on her shirt and punched her in the back of the head.  The child began to cry.  Father told the child that mother had started the fight and then threw an object at her, which struck her in the eye.  Mother shoved father.

Mother knew father had gone to "rehab" for methamphetamine use but was not aware of his recent use until

his arrest in connection with the domestic violence incident. Mother was aware that father used marijuana.

Mother reported to the social worker that father was not employed and would steal her money from her bank account. Father refused to work because he owed child support. Maternal grandmother advised the social worker that father had stolen mother's money to buy drugs.

On October 9, 2024, father denied all the allegations, stating that mother had pushed him. Father advised the social worker that he had only held mother down so that she would stop hitting him. Father admitted to using marijuana but claimed that it had been months since he used methamphetamine.

The child reported seeing father take mother's eyeglasses off her face and throw them at the window. Father then threw a bag of food at mother and pushed her.

C.    *Adjudication/Disposition Hearing*

On November 4, 2024, the juvenile court held the adjudication and disposition hearing and sustained the counts. The child was ordered removed from father's custody and placed in mother's home. Mother's case plan included: a domestic violence program for victims; developmentally appropriate parenting classes; family maintenance; and individual counseling to address case issues. Father's case plan included: full, random, on-demand weekly drug and alcohol testing; domestic violence class for 26 weeks; developmentally appropriate parenting classes; individual counseling to address case issues; and family preservation. The court ordered monitored visitation for father, two times per week for two hours each visit.

D.      *Status Review Report*

On April 23, 2025, the Department filed a status review report, which included mother's statement that on November 11, 2024, father broke into maternal grandmother's home and stole mother's purse and keys and placed tracking devices in her purse and vehicle.  Father also hacked mother's cell phone.  On November 14, 2024, father got on top of mother's vehicle, with mother inside, and would not get down.  Mother called police and reported that father had threatened to kill her.  The police took photographs of the tracking devices and photographs of text messages between father and mother in which father admitted to placing the tracking devices in mother's car and purse.  Mother changed her telephone number and moved out of her home and into secure housing.  On April 8, 2025, mother moved into an apartment.

On November 19, 2024, the juvenile court issued a temporary restraining order.  On March 25, 2025, the court granted mother's request for a restraining order.  The order prohibited father, for a period of three years, from harassing, stalking, or threatening mother, and from contacting mother except for court-ordered visits with the child.

The Department reported that father had only visited the child twice during the review period.  In December 2024, father texted the social worker and cursed at her for her purported failure to provide visits with the child.  Father again denied the allegations in the section 300 petition.  In April 2025, father apologized to the social worker for his text messages.

Father was arrested in February 2025 and was not released until sometime in March 2025.

On March 25, 2025, father was housed at and enrolled with Impact Drug and Alcohol Treatment Center (Impact) for programs in parenting, anger management, and post-incarceration syndrome. As of April 2, 2025, father was partially compliant with the drug/alcohol program. Father did not drug test because he did not have a form of identification and failed to provide the social worker with a photograph in order to obtain such identification. Father was partially compliant as to his participation in parenting classes. Father was non-compliant with the domestic violence program and family preservation services. Mother was compliant with her case plan.

The Department recommended termination of dependency jurisdiction, with an order for mother to receive sole legal and physical custody of the child.

E.  *Order Terminating Jurisdiction*

On May 5, 2025, the juvenile court held the status review hearing. Mother and child's counsel agreed with the Department's recommendation. Father's counsel argued that joint legal custody with unmonitored visitation was appropriate. Father's counsel cited father's participation in parenting classes, anger management, and a post-incarceration syndrome program. Counsel also claimed that father had been a part of the child's life throughout the duration of the dependency case. Following argument, the juvenile court terminated dependency jurisdiction, and awarded sole physical and legal custody of the child to mother, with monitored visits for father. On May 9, 2025, the juvenile court signed the custody order. Father timely appealed.

## III.  DISCUSSION

"'[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case (§ 362.4).'  [Citation.]  We review the juvenile court's exit orders for an abuse of that discretion.  [Citations.] We will not disturb the juvenile court's decision ""unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.""" [Citation.]"  (*In re J.M.* (2023) 89 Cal.App.5th 95, 112–113.)  We review factual findings for substantial evidence.  (See *In re N.M.* (2023) 88 Cal.App.5th 1090, 1094.)

"'[I]n making exit orders, the juvenile court must look at the best interests of the child.'  [Citations.]  The court must be guided by the totality of the circumstances and issue orders that are in the child's best interests.  [Citations.]  Because juvenile dependency proceedings arise when children are subject to or at risk of abuse or neglect, '[t]he presumption of parental fitness that underlies custody law in the family court just does not apply …. Rather the juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions.'  [Citations.]"  (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 112; see *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 713 [finding substantial evidence supported award of sole legal custody to father, based on mother expressing anger at father having sole physical custody and threatening to take child, failure to drug test and follow through on rehabilitation referrals, representations to therapist that she had completed drug rehabilitation and was drug free, irregular and

8

inappropriate conduct during visits, and extensive serious mental illness history].)

Father contends there was insufficient evidence to support the juvenile court's order because the Department failed to present evidence that father's relationship with mother was so "acrimonious" that "shared legal custody would be infeasible." We disagree. The record reflects that even after being arrested for engaging in domestic violence against mother, father broke into mother's home, planted tracking devices in mother's purse and car, and hacked into her phone. A few days later, father climbed onto the roof of mother's vehicle while mother was inside, refused to get down, and threatened to kill her. This conduct resulted in the issuance of a restraining order protecting mother from father. Thus, substantial evidence demonstrates the parents' relationship was acrimonious.

Further, father cannot demonstrate that an order awarding the parents joint legal custody would be in the child's best interests.[2] "'Joint legal custody' means that both parents shall

---

[2]     Father contends that there is a presumption for parents to share rights and responsibilities for child rearing, citing Family Code sections 3020 and 3011. "'Dependency proceedings [,however,] are governed by the Welfare and Institutions Code, rather than the Civil Code or the Family Code.' [Citation.] When a juvenile court makes custody and visitation orders, it does so pursuant to its authority under the Welfare and Institutions Code, guided by the totality of the circumstances in issuing orders that are in the child's best interests. [Citations.]" (*In re C.M.* (2019) 38 Cal.App.5th 101, 109.) Father also suggests the juvenile court abused its discretion when it failed to provide a reason for its legal custody order. Father, however, misconstrues the record. The juvenile court adopted the Department's recommendation based on the status review report, in which the

share the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." (Fam. Code, § 3003.) According to father, his participation in programs in April 2025, his compliance with the restraining order, and his remorse for his prior acts support an award of joint legal custody. We disagree as substantial evidence supports the juvenile court's order. During the review period, from November 2024 to April 2025, father visited the child two times, even though he was granted two visits per week. And, father blamed the social worker for his failure to visit, cursing at her. Moreover, father stole money from mother and refused to work because he owed child support. On this record, substantial evidence supports a finding that giving father the right to make decisions related to the health, education, and welfare of the child would not be in the child's best interests. Accordingly, the juvenile court did not abuse its discretion when it awarded sole legal custody to mother.

---

Department recommended sole physical and legal custody for mother because, among other things, father "has not addressed and resolved the case issues that brought the family to the attention of the Department." Moreover, "[t]he Welfare and Institutions Code does not require a specific statement of reasons be given when making a custody order …. [Appellant] is not prejudiced by the court's failure to be more specific since the record is clear as to the circumstances leading to the denial of joint legal custody." (*In re Jennifer R.*, *supra*, 14 Cal.App.4th at p. 713.)

## IV.   DISPOSITION

The custody order awarding sole legal custody of the child to mother is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

BAKER, J.