Filed 9/19/24  In re E.M. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re E.M., a Person Coming Under the Juvenile Court Law. | B327713 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 22CCJP01780) |
| Plaintiff and Respondent, | |
| v. | |
| O.M., | |
| Defendant and Appellant. | |
| C.C. et al., | |
| Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore. Affirmed.

Lindsey M. Ball, under appointment by the Court of Appeal, for Appellant O.M.

Leslie A. Barry, under appointment by the Court of Appeal, for Respondent C.C.

Jonathan Grossman, under appointment by the Court of Appeal, for Minor E.M.

_____

In this dependency matter, O.M. (father) contends the juvenile court erroneously relied upon Family Code section 3044 and otherwise abused its discretion in terminating jurisdiction over the child (E.M.) with an order granting sole legal and physical custody to C.C. (mother).  Finding no error, we affirm.[1]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Dependency Petition, Jurisdiction, and Disposition*

On May 9, 2022, the Department filed a petition under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1)[2] to protect nine-month-old E.M. (born July 2021).  According to the petition, on April 13, 2022, both parents engaged in an altercation with E.M.'s two paternal uncles, during which father pushed, punched, choked, brandished a knife, and repeatedly attempted to stab the uncles in the presence of the child, after which authorities arrested father for assault with a deadly weapon (counts a-1 and b-1 of the petition).  The petition further alleged that father and mother had a history of violent

_____

[1]     Respondents are mother and the minor child.  The Los Angeles Department of Children and Family Services (the Department) has advised this court that it takes no position on this appeal.

[2]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

interactions with each other (counts a-2 and b-3), that father had a past hospitalization for psychiatric illness after which he failed to participate in mental health treatment (count b-2), and that father abused marijuana (count b-4).

On May 10, 2022, the juvenile court ordered E.M. into the Department's temporary placement and custody, with separate, monitored visitation for each parent. The juvenile court further ordered the Department to provide reunification services, including drug testing for father.

On August 22, 2022, the juvenile court held an adjudication and disposition hearing and sustained all allegations regarding the parents' physical fight with the uncles, father's repeated attempts to stab the uncles in the presence of E.M., and the parents' history of domestic violence. The juvenile court dismissed the remaining counts relating to father's marijuana use and mental health issues, finding no "nexus" established between those allegations and risk of harm to the child, and that the concerns raised by the dismissed allegations could nevertheless be addressed in the case plan. The juvenile court found E.M. subject to its jurisdiction pursuant to section 300, subdivisions (a) [risk of serious physical harm inflicted nonaccidentally] and (b)(1) [risk of serious physical harm due to failure to protect].

During the disposition phase of the proceeding, the juvenile court received in evidence several items documenting mother's attendance and active engagement in a safety-focused parenting program, a domestic violence women's support group, and individual counseling focused on conflict management, maintenance of a child-safe home, and the Department's involvement. Additionally, mother reported having moved into a

3

separate residence away from father. Mother testified that she had learned about the "cycle of domestic violence" in her domestic violence classes, that she was no longer in a relationship with father because she believed the relationship was unhealthy for her and "especially" for E.M., and that if E.M. were released to her custody, she would phone 911 if father came to her home.

The juvenile court observed, "Mother is displaying insight as to not only the different types of domestic violence but the cycle of domestic violence and the importance of protecting [E.M.] . . . and [mother] is developing those protective capacities." The juvenile court released E.M. to mother with several conditions, including that the Department verify father was not residing in mother's home, that mother allow unannounced visits by the Department, that the parents' communications be through the online platform Talking Parents, and that mother must call 911 and inform the social worker if father comes to her home.

The juvenile court concluded it was "premature" to order unmonitored visits with father in light of his history of aggressive behavior and his "need[] to engage in services." The juvenile court ordered a case plan for father, requiring his participation in drug testing as well as enrollment in a 52-week domestic violence batterer's intervention program, a parenting program, and individual counseling. The juvenile court ordered mother to continue with the services outlined in her case plan, and ordered conjoint counseling with father if mother and father planned to reconcile.

4

### B. Six-month Status Report, Review Hearing, and Exit Order

#### 1. The Department's Six-month Status Report

On February 10, 2023, the Department filed a written status report, which detailed that mother completed her parenting and domestic violence classes, was communicating well with the Department and in-home outreach counselor, was steadily employed, had enrolled E.M. in childcare, and had continued to increase her knowledge about child development. The Department further reported that E.M. was "doing well" in mother's home, was "bonding" with mother, and played happily and consistently with other children in his daycare program.

The Department also reported that father was not doing so well. From the time of E.M.'s detention in May 2022 to the end of 2022, father missed over 20 drug tests. In January 2023, father again missed multiple drug tests, and, on several occasions, was a no-show for drug testing after confirming with the social worker that he would appear. On occasions where father showed up for drug testing, he tested positive for marijuana metabolite, without the hoped-for steady decrease. In November 2022, father tested positive for methamphetamine in addition to marijuana and amphetamine. The Department further reported that Father failed to comply with other aspects of his case plan. Father's domestic violence program terminated him for excessive absences and lack of cooperation, father failed to qualify for a certificate of completion of his parenting class due to his excessive absences, and father's individual counseling program similarly terminated its services to father due to his excessive absences and lack of cooperation.

Although father had "positive and safe interactions" with E.M. when he attended his monitored visits, his attendance was inconsistent, and he was frequently late. The Department recommended terminating jurisdiction with a family law order giving mother sole physical custody of child, with parents having joint legal custody and father continuing to have monitored visits.

2. *The Six-month Review Hearing*

At the outset of the February 21, 2023 review hearing, the juvenile court advised the parties, "The court is in receipt of the [Department's] report prepared for today's hearing. The child is released to the mother. The recommendation is to terminate jurisdiction with the family law order giving mother sole physical, joint legal, monitored visits for father. There was a positive test for meth and levels of marijuana have been going up." The Department submitted on its report and minor's counsel indicated agreement with the Department's requests. Mother, however, requested "sole legal [custody]" in light of "father not participating in services and also the domestic violence."

Following mother's request for sole legal custody, the juvenile court inquired of minor's counsel whether she thought it best for the child to be placed in joint custody of both parents or to be placed in mother's sole legal custody, and minor's counsel advised the court that she (minor's counsel) believed the child's best interest would be served by an order granting mother sole legal custody: "I do agree with [mother's counsel]. Father has this domestic violence background that was part of the case. He has shown he has not benefitted from his domestic violence program, as is reported by the program itself, so I do believe it's in [child's] best interest. And I also believe there's a presumption

6

under Family Code 3044 against father under these circumstances for sole legal custody to mother." Father advocated in favor of joint legal custody, arguing it was in E.M.'s best interest. In granting mother sole legal custody, the juvenile court said nothing regarding Family Code section 3044 and expressed agreement with mother and minor's counsel, both of whom had just advocated that granting mother sole legal custody was in the child's best interest, stating: "All right. Thank you. I think at this point I do agree with [mother's counsel and minor's counsel] based on father's lack of participation in his case plan. But I am going to attach the – in terms of the legal custody, I am going to give mother sole legal at this time. However, I am going to attach a JV-206 [form explaining reasons for monitored visitation] and if he does choose to participate in these services he can go back to the family law court and request a modification."

3. *The Juvenile Court's Written Order and Attachment Indicating Father's Noncompliance with Programming, Counseling, and Drug Testing*

Consistent with its oral ruling, the juvenile court signed a family law custody order granting sole legal and physical custody to mother and monitored visitation to father. The attached JV-206 form set forth that father had failed to: complete or make substantial progress in parenting classes, drug testing, the 52-week domestic violence intervention program, psychological assessment, psychiatric evaluation, and individual counseling. The form stated, "Completion of one of the programs above *might*, but need not, constitute a significant change of circumstances for purposes of modifying this final custody order."

That same day, the juvenile court terminated jurisdiction. On February 27, 2023, father filed a timely notice of appeal.

7

## II. DISCUSSION

Father appeals the grant of sole legal custody to mother, contending the juvenile court erroneously applied the Family Code section 3044 presumption and further abused its discretion by denying him joint custody based only on his failure to complete his reunification programs. Because the record indicates the custody and termination order did not rely upon or invoke Family Code section 3044 and was within the juvenile court's discretion, we affirm.

### A. *Standard of Review*

" '[T]he juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case.' [Citation.] We review a custody (or 'exit') order . . . for abuse of discretion, and will not disturb the order 'unless the juvenile court " ' "exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " ' [Citation.] ' " 'The appropriate test for abuse of discretion is whether the juvenile court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing juvenile court has no authority to substitute its decision for that of the juvenile court.' " ' [Citation.]" (*In re N.M.* (2023) 88 Cal.App.5th 1090, 1094.)

### B. *Principles Governing Juvenile Court "Exit Orders"*

Section 362.4 authorizes the juvenile court, when terminating dependency jurisdiction, to issue a custody and visitation order, which will in turn be the basis for opening a family law court file and will remain in effect until modified or terminated by subsequent court order. Section 302, subdivision (d) provides that the juvenile court's post-termination

8

custody orders (commonly known as "exit orders") may only be modified upon a showing of changed circumstances and the best interests of the child.  (*In re Anna T.* (2020) 55 Cal.App.5th 870, 871-872.)

"In making exit orders, the juvenile courts must look at the best interests of the child." (*In re John W.* (1996) 41 Cal.App.4th 961, 973.)  "The juvenile court has a special responsibility to the child as *parens patriae* and must look to the totality of the child's circumstances when making decisions regarding the child." (*In re Chantal S.* (1996) 13 Cal.4th 196, 201 (*Chantal S.*).)

"Although both the family court and the juvenile court focus on the best interests of the child, significant differences exist.  In juvenile dependency proceedings the child is involved in the court proceedings because he or she has been abused or neglected.  Custody orders are not made until the child has been declared a dependent of the court and in many cases, such as this one, the child has been removed from the parents upon clear and convincing evidence of danger.  The issue of the parents' ability to protect and care for the child is the central issue.  The presumption of parental fitness that underlies custody law in the family court just does not apply to dependency cases.  Rather the juvenile court, which has been intimately involved in the protection of the child, is best situated to make custody determinations based on the best interests of the child without any preferences or presumptions." (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712 [rejecting application, in dependency juvenile court, of a former family law presumption for joint legal custody].)

An award of sole legal or physical custody to one parent "does not serve to 'terminate' the other's parental rights or due

9

process interest in parenting." (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 958.)  To the contrary, as directly contemplated by the juvenile court below, when one parent obtains sole custody, the other parent retains the right to request modification in the future based on changed circumstances.

### C. *The Juvenile Court Acted Within Its Discretion and Did Not Rely on the Family Code Section 3044 Presumption*

Relying on the single and brief reference to Family Code section 3044[3] by minor's counsel, father argues that the juvenile court improperly relied on the statute in making its custody ruling and exit order.  This contention is unsupported by the record.

Minor's counsel mentioned the statutory presumption in one sentence, as, at best, a subsidiary argument, and the juvenile court never followed up on it.  Nor did the juvenile court mention the presumption in making its order.  Critically, the juvenile court did mention other factors wholly consistent with its consideration of the "totality of the . . . circumstances" (*Chantal S.*, *supra*, 13 Cal.4th at p. 206), including father's positive test for methamphetamine, repeated positive tests for marijuana metabolite, and failure to comply with virtually all of the counseling and programming elements of his case plan. The juvenile court also recited that it had read and received the Department's six-month report, which detailed father's multiple

---

[3] Family Code section 3044, applicable in family law matters, provides a rebuttable presumption against joint or sole custody where there has been a court finding of domestic violence. We have previously held this presumption inapplicable to dependency proceedings.  (*In re C.M.* (2019) 38 Cal.App.5th 101, 108.)

10

failures to comply with his case plan, including his failures to show up for drug testing and his repeated positive tests for controlled substances. The juvenile court directly mentioned father's failure to engage in services in both its oral ruling and the attachment to its written ruling. On these facts, we will not assume the juvenile court relied on an inapplicable presumption simply due to counsel's brief mentioning. (Cf. *In re Julian R.* (2009) 47 Cal.4th 487, 499 [we presume the trial juvenile court was aware of, and followed, applicable law].)

Father's reliance on *In re N.M., supra,* 88 Cal.App.5th 1090, is misplaced. There, the juvenile court indicated its custodial order was based in part on "reward[ing]" good parental behavior, which was improper because "[a]n exit order must serve the best interests of the children, not reward or punish one parent or another for failing to comply with the case plan." (*Id.* at pp. 1094-1095.) There is no indication that the juvenile court below sought to mete out rewards or punishment in its analysis.

## DISPOSITION

The order is affirmed.


DAVIS, J.*

We Concur:



BAKER, Acting P. J.        MOOR, J.

---

*        Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11